## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**AGROCOMPLECT, AD,**                         )
                                              )
           Plaintiff,          )
                                              )      Case No. 1:07CV00165 (RBW)
   v.                                   )
                                              )
**THE REPUBLIC OF IRAQ**                      )
**Ministry of Finance**                       )
**Bab Al Moazam**                             )
**Near Mohammad Al Qasem Highway**            )
**Baghdad**                                   )
**Iraq**                                      )
                                              )
           Defendant.         )
                                              )

---

### DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant

The Republic of Iraq respectfully moves the court for an order dismissing the Complaint of

Plaintiff Agrocomplect, AD on the following grounds:

    (i)     lack of subject matter jurisdiction under the Foreign Sovereign Immunitites Act,

          28 U.S.C. §§ 1330(a), 1604, and 1605(a), and therefore also lack of personal

          jurisdiction person under 28 U.S.C. § 1330(b); and

    (ii)    failure to state a claim for relief.

The grounds for this Motion are set forth in the accompanying Statement of Points and Authorities.  A proposed Order is attached.

Dated: May 21, 2007

Respectfully submitted,

/s/ Matthew D. Slater
Matthew D. Slater (D.C. Bar # 386986)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
Facsimile:   (202) 974-1999


Jonathan I. Blackman
Lisa M. Coyle
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:   (212) 225-3999

*Attorneys for Defendant The Republic of Iraq*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**AGROCOMPLECT, AD,**                )
                                      )
       Plaintiff,        )
                                      )      Case No. 1:07CV00165 (RBW)
  v.                              )
                                      )
**THE REPUBLIC OF IRAQ**              )
**Ministry of Finance**               )
**Bab Al Moazam**                     )
**Near Mohammad Al Qasem Highway**    )
**Baghdad**                           )
**Iraq**                              )
                                      )
       Defendant.        )
                                      )

---

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**
**OF THE DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Matthew D. Slater
D.C. Bar No. 386986
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801
Tel.: 202 974-1500
Fax: 202 974-1999

Jonathan I. Blackman
Lisa Coyle
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Tel: 212-225-2000
Fax: 212-225-3999

Attorneys for Defendant The Republic of Iraq

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT .................................................................................................................. 5

I.     THIS COURT LACKS JURISDICTION UNDER THE
      FOREIGN SOVEREIGN IMMUNITIES ACT ....................................................... 5

    A.   This Court May Not Exercise Jurisdiction
        Under 28 U.S.C. § 1605(a)(2) ......................................................... 5

        1. Plaintiff's Alleged Use Of U.S. Suppliers In Order To Perform
           Its Obligations Under The Contract Does Not Constitute A
           Direct Effect .................................................................................... 6

        2. Intended Payments Alleged By Plaintiff Do Not Constitute A
           Direct Effect .................................................................................... 8

        3. Alleged Targeting Of Construction Projects In Iraq By U.S.
           Forces In The First Gulf War Does Not Constitute A Direct
           Effect ............................................................................................... 9

    B.   This Court May Not Exercise Jurisdiction
        Under 28 U.S.C. § 1605(a)(1) Or (a)(6) ........................................ 10

        1. Iraq Did Not Waive Its Sovereign Immunity ............................... 10

        2. 28 U.S.C. § 1605(a)(6) Is Inapplicable ....................................... 12

II.    AGROCOMPLECT'S CLAIM IS BARRED AS A
      MATTER OF LAW BY ITS RELEASE OF THE
      REPUBLIC AND IS TIME-BARRED ................................................................... 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

28 U.S.C. § 1330(b) ........................................................................................................ 5

28 U.S.C. § 1605(a)(6)................................................................................................... 12, 13

9 U.S.C. § 3.................................................................................................................... 14


**Cases**

Argentine Republic v. Amerada Hess Shipping Corp.,
488 U.S. 428 (1989)....................................................................................................... 5

Ascension Orthopedics, Inc. v. Curasan AG,
No. A-06-CA-424 LY, 2006 WL 2709058 (W.D. Tex. Sept. 20, 2006) ........................... 13

*Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank,
251 F. Supp. 2d 126 (D.D.C. 2003) .............................................................................6-7, 9, 11

*Creighton Ltd. v. Gov't of State of Qatar,
181 F.3d 118 (D.C. Cir. 1999) ...................................................................................... 10, 11

Goodman Holdings v. Rafidain Bank,
26 F.3d 1143 (D.C. Cir. 1994) ...................................................................................... 7, 9

I.T. Consultants, Inc. v. Islamic Republic of Pakistan,
351 F.3d 1184 (D.C. Cir. 2003) .................................................................................... 9

*IDAS Res. N.V. v. Empresa Nacional de Diamentes de Angola E.P.,
No. 06-00570, 2006 WL 3060017 (D.D.C. Oct. 26, 2006) ............................................... 7, 9

Khan v. Parsons Global Servs., Ltd.,
No. 03-1574, 2007 WL 960115 (D.D.C. Mar. 30, 2007) ................................................... 13

Mikkilineni v. Commonwealth of Pa.,
Nos. 03-5239, 03-5285, 2004 WL 2671647 (D.C. Cir. Nov. 22, 2004) ............................ 15

Maritime Int'l Nominees Establishment v. Republic of Guinea,
693 F.2d 1094 (D.C. Cir. 1982) .................................................................................... 11

Millicom Int'l Cellular, S.A. v. Republic of Costa Rica,
995 F. Supp. 14 (D.D.C. 1998) ..................................................................................... 7, 8

Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.,
Nos. 04-0538, 04-1240, 2005 WL 1541041 (D.D.C. June 30, 2005)................................ 15

Nemariam v. Fed. Democratic Republic of Ethiopia,
400 F. Supp. 2d 76 (D.D.C. 2005) ..................................................................... 1

New York State Bar Ass'n v. FTC,
276 F. Supp. 2d 110 (D.D.C. 2003) ................................................................... 14

Peterson v. Royal Kingdom of Saudi Arabia,
416 F.3d 83 (D.C. Cir. 2005) ........................................................................... 8

*Republic of Argentina v. Weltover, Inc.,
504 U.S. 607 (1992).......................................................................................... 5, 6

*Termorio S.A. E.S.P. v. Electrificadora del Atlantico S.A. E.S.P.,
421 F. Supp. 2d 87 (D.D.C. 2006) ................................................................... passim

Vanover v. Hantman,
77 F. Supp. 2d 91 (D.D.C. 1999) ..................................................................... 14

Walker & Zanger (West Coast) Ltd. v. Stone Design S.A.,
4 F. Supp. 2d 931 (C.D. Cal. 1997) ................................................................. 13

**Other Authorities**

S.C. Res. 687, ¶ 18, U.N. Doc. S/22454 (Apr. 3, 1991) ........................................ 2

The Secretary-General, Report of the Secretary-General Pursuant
to Paragraph 19 of Resolution 687,
U.N. Doc. S/22559 (May 2, 1991)......................................................................... 2

Convention on the Recognition and Enforcement of Foreign Arbitral Awards
June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S 38 ................................................ 11, 12

Defendant The Republic of Iraq ("Iraq" or the "Republic") submits this statement of points and authorities in support of its motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

Agrocomplect seeks relief in this Court under a sixteen-year-old, time-barred (and subsequently released) claim for alleged breach of a contract containing an arbitration clause, an exclusive forum selection clause providing for adjudication in Iraqi courts and a choice of law clause providing that the contract is governed by Iraqi law. There is no basis on which Agrocomplect can litigate these claims in a United States court, even if they had not already been released as part of the new post-Saddam Iraqi government's debt settlement process. Agrocomplect fails to allege and cannot allege facts sufficient to demonstrate that this Court may exercise subject matter jurisdiction over its claims against the Republic under the Foreign Sovereign Immunities Act, and they should therefore be dismissed.

Moreover, even if this Court did have subject matter jurisdiction, and even if the claims were not contractually committed to arbitration, the Complaint fails to state a claim upon which relief can be granted because Agrocomplect's claims have been released, and because they are time-barred on their face. Accordingly, if this Court had jurisdiction, it would be required to dismiss them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[1]

The plaintiff, Agrocomplect, AD ("Agrocomplect"), a Bulgarian corporation, alleges that over twenty years ago it entered into a contract with Iraq, a foreign state, for the provision of engineering and construction services in Iraq (the "Contract"), Compl. ¶ 4, and that work under

---

[1]    This statement of facts is largely drawn from the allegations in the Complaint together with additional materials regarding Agrocomplect's contract and the release of its claim against Iraq that the Court may consider on a motion to dismiss for lack of subject matter jurisdiction under the FSIA. See Nemariam v. Fed. Democratic Republic of Ethiopia, 400 F. Supp. 2d 76, 80 (D.D.C. 2005).

this Contract commenced in Iraq on March 12, 1985. Compl. ¶ 11.  Agrocomplect further alleges

that although it had substantially performed under the Contract on August 2, 1990, see Compl. ¶

12, Iraq failed to pay for such performance as agreed under the Contract.  See Compl. ¶¶ 17-18.

Finally, Agrocomplect alleges that in January 1991, as a result of American military activity in

Iraq and Kuwait in the first Gulf War, its machinery, production base and camp facilities were

destroyed.  Compl. ¶ 15.

The Contract contained an arbitration clause providing that "any dispute[s] or

difference[s] of any kind whatsoever [that] shall arise between [Iraq] and [Agrocomplect] in

connection with or arising out of the contract" that could not be settled by the engineer in a

manner acceptable to both parties would "be referred to a Committee of Arbitration" (the

"Arbitration Clause").  See Compl. ¶ 6.  The Contract further provided that "[t]he Contract shall

be subject to and construed according to the Iraqi Laws regulations and instructions" (the

"Choice of Law Clause"), and that "the Iraqi courts shall have exclusive jurisdiction to hear and

determine all actions and proceedings arising out of the Contract." (the "Forum Selection

Clause").  See Compl. ¶ 6.[2]

Agrocomplect previously pursued the claims asserted in the Complaint in multiple fora,

and ultimately received payment in settlement of such claims.  See Compl. ¶¶ 21-26.

Agrocomplect first submitted its claims to the United Nations Compensation Commission (the

"UNCC"), which rejected them on March 19, 1999.  See Compl. ¶¶ 21-22.[3]

---

[2]        Tellingly, Agrocomplect has not attached a copy of the Contract to its Complaint, although it clearly has one, since it quotes from portions of it in its Complaint.  To date, the Republic has not been able to locate a complete copy.

[3]        The UNCC was set up after the first Gulf War by the United Nations to provide compensation for certain types of claims resulting from the Saddam government's invasion of Kuwait and the subsequent war. See S.C. Res. 687, ¶ 18, U.N. Doc. S/22454 (Apr. 3, 1991); The Secretary-General, Report of the Secretary-General Pursuant to Paragraph 19 of Resolution 687, U.N. Doc. S/22559 (May 2, 1991).

In 2004, after the overthrow of Saddam, the Coalition Provisional Authority established the Iraqi Debt Reconciliation Office (the "IDRO"), and engaged Ernst & Young ("E&Y") as reconciliation agent in connection with the restructuring of Iraq's debt.  See Compl. ¶ 23.  As plaintiff acknowledges, the IDRO was formed "for the expressed purpose of resolving certain debts on certain pre-established terms, including discounts and structured payment schedules." Compl. ¶ 23.

On December 9, 2004, E&Y posted a "Request for Information" (the "RFI") on its website, soliciting information concerning certain categories of commercial claims against Iraq and other Iraqi public sector obligors.  After responding to the RFI, the plaintiff received an Invitation to Tender Claims for Cash Purchase and Cancellation (the "Invitation"), issued by Iraq on February 9, 2006.  See Invitation To Tender Claims for Cash Purchase and Cancellation, dated Feb. 9, 2006, attached hereto as Exhibit A.  The Invitation was the fourth in a series of six such Invitations issued to commercial entities that had submitted eligible claims to E&Y in response to the RFI.  Pursuant to the Invitation, Agrocomplect tendered, for purchase and simultaneous cancellation, the breach of contract claim it now seeks to assert.  See Tender submitted to the Republic of Iraq by Agrocomplect dated Mar. 9, 2006 (the "Tender"), attached hereto as Exhibit B.

E&Y was unable to reconcile the claim Agrocomplect submitted in response to the RFI with available Iraqi records, and accordingly, by submitting the Tender, Agrocomplect agreed that it would submit its claim to the IDRO arbitration mechanism for reconciliation and, if granted an award in such arbitration, such claim would be deemed a "Reconciled Eligible Claim" tendered by Agrocomplect pursuant to its Tender, and would be purchased by Iraq at a purchase price (the "Purchase Price") equal to 10.25% of the total amount of the claim.  See Ex. B at 2

("this Tender, if accepted by Iraq…constitutes [Agrocomplect's] valid and binding obligation, enforceable against [Agrocomplect] in accordance with the terms of this Tender and the Invitation"); Ex. A at §§ 5, 15.  In its Tender, Agrocomplect agreed to "receive the applicable Purchase Price on the Closing Date as the <u>full consideration</u> for the sale to Iraq and cancellation of the Reconciled Eligible Claims listed in the Tender and in <u>full discharge, release and satisfaction of all claims</u> … for principal, contractual interest, late or penalty interest, indemnities, fees and any other amounts of whatever description then due in respect of the Reconciled Eligible Claims tendered by [Agrocomplect]" and to "<u>release and indemnify</u> Iraq and any other obligor or guarantor in respect thereof from <u>any and all claims by [Agrocomplect]</u> (or any other person claiming through [Agrocomplect]) arising under such Reconciled Eligible Claims or any contract or Judgment evidencing such Reconciled Eligible Claims."  <u>See</u> Ex. A at § 8(ii) (emphasis supplied).

Agrocomplect's claim was submitted to the IDRO arbitral mechanism for reconciliation, where it was determined that Agrocomplect was entitled to $7,505,203.20 of principal (plus interest calculated according to the methodology described in the "Reconciliation Methodology," dated July 6, 2005, also posted on E&Y's website) in respect of its claim.  Compl. ¶ 26. Pursuant to the Invitation and the Tender, Iraq purchased the claim for 10.25% of the total amount of the claim, resulting in a total payment to Agrocomplect of $1,761,875.12.  Compl. ¶¶ 24, 26.  Thus the claims Agrocomplect now seeks to assert have been fully discharged, released and satisfied, and Agrocomplect has received payment in full settlement thereof.

<u>**ARGUMENT**</u>

I.    **THIS COURT LACKS JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT**

Because Iraq is a foreign state, the Foreign Sovereign Immunities Act (the "FSIA") provides the sole basis for obtaining subject matter jurisdiction over claims brought against it in the courts of the United States. <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 434 (1989). Pursuant to the FSIA, foreign sovereigns enjoy immunity from the jurisdiction of United States courts "unless one of several statutorily defined exceptions [to sovereign immunity] applies." <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 610-11 (1992) (citing 28 U.S.C.A. § 1604). Plaintiff contends that this Court has jurisdiction over its claims pursuant to §§ 1605(a)(2) and (a)(6). Compl. ¶ 1. Because plaintiff fails to allege facts that, if true, would be sufficient to demonstrate jurisdiction under either of these provisions, this Court must dismiss for lack of subject matter jurisdiction.[4]

A.    <u>**This Court May Not Exercise Jurisdiction Under 28 U.S.C. § 1605(a)(2)**</u>

To establish jurisdiction, plaintiff first invokes the direct effect exception set out in the third clause of § 1605(a)(2). Compl. ¶¶ 1, 28-31. This section grants United States courts jurisdiction over actions against foreign sovereigns "based upon… an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere… that… causes a direct effect in the United States."[5]

Plaintiff's breach of contract claim is purportedly based upon Iraq's alleged failure to pay Agrocomplect for work performed under the Contract. Compl. ¶ 18. Thus, the alleged "act" for

---

[4]    Because personal jurisdiction cannot exist under the FSIA unless there is also subject-matter jurisdiction, <u>see</u> 28 U.S.C. § 1330(b), this Court also lacks personal jurisdiction over the Republic in this action.

[5]    Plaintiff has not alleged jurisdiction exists pursuant to the first or second clause of §1602(a)(2). <u>See</u> Compl.

purposes of the direct effects test is Iraq's alleged nonpayment. To establish jurisdiction, therefore, plaintiff must allege facts which, if true, would demonstrate that such nonpayment caused a "direct effect" in the United States. See Weltover, 504 U.S. at 617. The purpose of the "direct effects" test is to establish a legally significant nexus between the defendant state's alleged commercial activity and the United States. See Termorio S.A. E.S.P. v. Electrificadora del Atlantico S.A. E.S.P., 421 F. Supp. 2d 87, 96 (D.D.C. 2006) ("There is not a sufficient nexus between the Agreement and the United States… to sustain a direct effect in the United States from defendant's alleged breach of the Agreement").

For FSIA jurisdictional purposes, in an action for breach of contract, "a 'direct effect' [in the United States] means a 'nontrivial' one which must 'follo[w] <u>as an immediate consequence of the defendant's activity</u>.'" Termorio, 421 F. Supp. 2d at 95 (citing Weltover, 504 U.S. at 618) (emphasis supplied). Plaintiff attempts to allege three direct effects in its Complaint, but none of them satisfy the relevant test under well-settled FSIA law.

1.    **Plaintiff's Alleged Use Of U.S. Suppliers In Order To Perform Its Obligations Under The Contract Does Not Constitute A Direct Effect**

Plaintiff first alleges "[t]he obligations set out in the Contract had a direct effect in the United States, in that goods and services to be provided pursuant to the Contract were to be supplied in part by commercial entities in the United States." Compl. ¶ 29. Even if true, this fact fails to constitute a "direct effect" under the FSIA for a host of reasons. First, plaintiff does <u>not</u> allege there was a "contractual obligation" to use United States subcontractors or other entities, or that the Contract otherwise required performance in the United States. Courts that have considered the direct effects test have "interpreted [it] to require a clause in a contract <u>mandating the fulfillment of contractual obligations in the United States</u>." Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank, 251 F. Supp. 2d 126, 134 (D.D.C. 2003) (emphasis supplied in

6

part); <u>see also</u> <u>Termorio</u>, 421 F.Supp.2d at 95-96; <u>Goodman Holdings v. Rafidain Bank</u>, 26 F.3d 1143 (D.C. Cir. 1994) (direct effects test not met where U.S. was not designated as place of performance).

Moreover, even if plaintiff had alleged the existence of a contractual obligation on Agrocomplect's part to use United States suppliers, that would still not satisfy the direct effects test.  The "direct effects" test requires that a direct effect in the United States must follow as an immediate consequence of the act of the <u>defendant</u> upon which the plaintiff bases its claim; effects following from the <u>plaintiff's</u> actions are irrelevant.  <u>IDAS Res. N.V. v. Empresa Nacional de Diamentes de Angola E.P.</u>, No. 06-00570, 2006 WL 3060017, at *7 (D.D.C. Oct. 26, 2006) (citing <u>Weltover</u>, 504 U.S. at 618); <u>see also</u> <u>Millicom Int'l Cellular, S.A. v. Republic of Costa Rica</u>, 995 F. Supp. 14, 22 (D.D.C. 1998) ("A contract claim based upon a breach constitutes a 'direct effect' if the foreign state breached obligations that the <u>foreign state itself</u> was required to perform in the United States" (emphasis supplied)).  Because Agrocomplect's vaguely alleged intention to rely upon U.S suppliers in performing <u>its</u> obligations under the Contract cannot be said to follow as an "immediate consequence" of Iraq's later alleged nonpayment of Agrocomplect, it cannot constitute a direct effect.  <u>See</u> <u>id.</u>

Agrocomplect's failure to and inability to allege the nonperformance of a contractual obligation of the Republic in the United States (or even that any other person was required to perform an obligation in the United States under the Contract at issue) is hardly surprising.  The alleged Contract was between a Bulgarian corporation and Iraq for the performance of services on engineering and construction projects <u>in</u> Iraq.  The United States was not the place of performance of these services, or the place of payment by Iraq for them.

7

Finally, Agrocomplect fails to allege what loss, if any, the alleged United States suppliers suffered, which if it occurred must necessarily have arisen from Agrocomplect's failure to fulfill its own contractual obligations to them.  Such losses, even if proven, do not help plaintiff. Agrocomplect "cannot rely on any repercussion felt by [its] … creditors to establish 'direct effects' under [the "direct effects" prong of § 1605(a)(2) of the FSIA] because any derivative harm would be too indirect to qualify as an 'immediate consequence' of the defendant['s] conduct."  Millicom, 995 F. Supp. at 22 (citing Weltover, 504 U.S. at 618); see also Termorio, 421 F. Supp. 2d at 95 (effects on non-plaintiff entity that lacks standing in action irrelevant for purposes of direct effect test).  Even if Iraq's alleged nonpayment led to Agrocomplect's inability to pay United States suppliers, such effects would not be sufficient to meet the direct effects test under § 1605(a)(2).  Millicom, 995 F. Supp. at 22 (where "any consequences of the defendants' conduct affected only the plaintiffs' obligations to third parties… [such consequences] cannot constitute the legally significant acts to cause a 'direct effect' in the United States").

### 2.    Intended Payments Alleged By Plaintiff Do Not Constitute A Direct Effect

Although plaintiff alleges that "payment was to be made at least in part by and through banking institutions in the United States," Compl. ¶ 29, because plaintiff again fails to allege the existence of a contractual obligation for payments to be made in the United States, this argument also fails.  As previously discussed, the existence of a contract clause mandating the fulfillment of contractual obligations in the United States is crucial to finding a direct effect.  See Peterson v. Royal Kingdom of Saudi Arabia, 416 F.3d 83 (D.C. Cir. 2005) (no direct effect where allegations in complaint failed to evidence any agreement, express or implied, that plaintiff be

paid amounts owed to him in the U.S.); <u>see also</u> <u>Atl. Tele-Network</u>, 251 F. Supp. 2d at 134;

<u>Termorio</u>, 421 F. Supp. 2d at 95-96; <u>Goodman Holdings</u>, 26 F.3d at 1146-47.

This requirement of a contractual obligation to make a payment in the United States is

critical, because <u>all</u> U.S. dollar payments made by or to anyone in the world necessarily clear

through the United States banking system.  This fact, however, has not been found sufficient to

satisfy the "direct effects" test of FSIA jurisdiction over commercial activity of a foreign state

outside the United States.[6]  Indeed, plaintiff does not even allege that payment was to be made in

U.S. dollars.  Even accepting as true plaintiff's allegation regarding supposed intentions

regarding payment, the direct effects test is not satisfied.

### 3.    Alleged Targeting Of Construction Projects In Iraq By U.S. Forces In The First Gulf War Does Not Constitute A Direct Effect

Plaintiff again, and even more egregiously, if possible, misconstrues the direct effects test

by stating that "[p]erformance of the contract had a direct effect in the United States, in that the

construction projects became foreseeable targets of opportunity and necessity for the United

States military."  Compl. ¶ 30.  However, the relevant inquiry under the direct effects test is

whether the specific act of the defendant on which plaintiff's claim is based – in this case, Iraq's

alleged nonpayment – had a direct effect in the United States.  <u>See</u> <u>IDAS Res.</u>, 2006 WL

3060017, at *7 (citing <u>Weltover</u>, 504 U.S. at 618).  Plaintiff does not (and cannot) allege that

Iraq's alleged failure to pay for work performed under the Contract somehow caused the United

---

[6]       It is for this reason that cases in which direct effects are found based on contractual payment obligations consistently involve payment <u>into</u> a United States bank account, rather than "by" or "through" such an account.  <u>See, e.g.</u>, <u>Weltover</u>, 504 U.S. at 619 (direct effect found because U.S. was "place of performance for [defendant's] ultimate contractual obligations" and "[m]oney that was supposed to have been delivered<u> to a [U.S.] bank for deposit</u> was not forthcoming" (emphasis supplied)); <u>I.T. Consultants, Inc. v. Islamic Republic of Pakistan</u>, 351 F.3d 1184, 1186 (D.C. Cir. 2003) (holding "foreign sovereign's failure to make a contractually required <u>deposit in a bank in the United States</u> meets the statute's definition of a 'direct effect'" (emphasis supplied)).

States military in a later war to target the construction projects on which such work was performed. And of course those construction projects were not in the United States, but in Iraq.

**B.    This Court May Not Exercise Jurisdiction Under 28 U.S.C. § 1605(a)(1) Or (a)(6)**

### 1.    Iraq Did Not Waive Its Sovereign Immunity

Although plaintiff does not explicitly invoke the waiver exception to immunity in § 1605(a)(1) of the FSIA, the Complaint alleges "[t]he Contract Arbitration Clause constituted a waiver of sovereign immunity." Compl. ¶ 32. On its face, the Arbitration Clause, the text of which is included in the Complaint, does not contain an express waiver of sovereign immunity by Iraq, see Compl. ¶ 6, so plaintiff's argument must rest on the notion of implied waiver under § 1605(a)(1). There is no implied waiver of sovereign immunity in this Clause, however, or anywhere else in the Contract.

Courts in this Circuit follow the "virtually unanimous precedents construing the implied waiver provision narrowly." Creighton Ltd. v. Gov't of State of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999) (internal quotation marks omitted). To find an implied waiver, this Court must have evidence that Iraq intended to waive its sovereign immunity. Id. An agreement by a foreign sovereign to arbitrate under its own law does not constitute an implicit waiver of sovereign immunity in the courts of the United States where the foreign sovereign is not a signatory to a treaty for the recognition and enforcement of foreign arbitral awards to which the United States is also a signatory. See id. at 123.

Here, the Contract explicitly states that it "shall be subject to and construed according to the Iraqi Laws regulations and instructions." Compl. ¶ 6. Moreover, Iraq is not a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New

10

York Convention"),[7] which governs the enforcement of foreign arbitral awards in the United

States, nor to any other treaty with the United States providing for enforcement of agreements to

arbitrate or arbitral awards.  Nor does the Arbitration Clause provide for arbitration in the United

States.  Accordingly, the Arbitration Clause cannot constitute an implied waiver of the

Republic's immunity to suit in the United States.

     Creighton also held that for an agreement to arbitrate to constitute an implied waiver of

sovereign immunity, such agreement, or the resulting arbitral award, must be capable of

enforcement in the United States.  See Creighton, 118 F.3d at 123; see also Maritime Int'l

Nominees Establishment v. Republic of Guinea, 693 F.2d 1094, 1102–04 (D.C. Cir. 1982)

(agreement to ICSID arbitration did not constitute implied waiver where parties had agreed

tribunal would apply law of Guinea to dispute and did not contemplate involvement of U.S.

courts).  The Arbitration Clause here does not constitute an implied waiver because it is not

capable of enforcement in the courts of the United States for two independent reasons.

     First, the Contract explicitly states "the Iraqi courts shall have exclusive jurisdiction to

hear and determine all actions and proceedings arising out of the Contract."  Compl. ¶ 6

(emphasis supplied).  Such language constitutes a mandatory forum selection clause that is prima

facie valid.  See Atl. Tele-Network, 251 F. Supp. 2d at 135-36.  Agrocomplect "does not allege

that the clause is invalid for any reason such as fraud or overreaching" and it should therefore be

enforced.  Id.  Indeed, because of this Forum Selection Clause, even if this Court possessed

subject matter jurisdiction under the claims asserted by Agrocomplect, which it does not, it

would be separately bound by that Clause to dismiss the Complaint.

---

[7]      Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I.1, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (historical and statutory note).

Additionally, the Arbitration Clause is not capable of enforcement in the United States because, as noted above, Iraq is not a party to the New York Convention.  Upon signing the New York Convention, the United States entered a reservation stating that it would only apply it to the recognition and enforcement of arbitral awards made in the territory of another contracting state. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I.1, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.  Because Iraq is not a signatory to the New York Convention, neither an agreement to arbitrate in Iraq, nor any arbitral award arising under such an agreement, may be enforced in the courts of the United States.  For the foregoing reasons, the Arbitration Clause does not constitute an implied waiver of Iraq's sovereign immunity under § 1605(a)(1).

### 2.    28 U.S.C. § 1605(a)(6) Is Inapplicable

Finally, Agrocomplect alleges this Court possesses jurisdiction over its claim to compel arbitration pursuant to § 1605(a)(6), the arbitration exception to immunity under the FSIA.  For jurisdiction to exist under § 1605(a)(6), however, at least one of the following four prerequisites must be satisfied: (A) the arbitration takes place or is intended to take place in the United States; (B) the agreement or award is or may be governed by a treaty or international agreement in force in the United States calling for the recognition and enforcement of arbitral awards; (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under § 1605 or § 1607; or (D) the defendant has waived sovereign immunity under § 1601(a)(1).  See 28 U.S.C. § 1605(a)(6).  The facts Agrocomplect alleges, even if true, are insufficient to satisfy any of the foregoing prerequisites.

First, Agrocomplect does not allege, and there is no indication, that the parties to the Arbitration Clause intended the arbitration to take place in the United States.  To the contrary,

the Contract's Forum Selection Clause and Choice of Law Clause invoking the applicability of

Iraqi law and the jurisdiction of Iraqi courts indicate that the parties intended for any necessary

arbitration to take place in Iraq.  See Compl. ¶ 6.  Therefore, § 1605(a)(6)(A) does not apply.

   Second, for all the reasons previously discussed, this Court would not, absent the

Arbitration Clause, possess subject matter jurisdiction over Agrocomplect's underlying breach of

contract claim pursuant to any other provision of the FSIA, see supra Points  I.A – B(1),

rendering § 1605(a)(6)(C) inapplicable.  Nor, as discussed above, has Agrocomplect alleged

facts on which this Court may find that Iraq waived its sovereign immunity under §1605(a)(1),

rendering § 1605(a)(6)(D) inapplicable to the plaintiff.

   Finally, Agrocomplect cannot allege facts which, if true, would demonstrate that the

Arbitration Clause is "governed by" the New York Convention.  28 U.S.C. §1605(a)(6)(B).

Agrocomplect does not allege that the Arbitration Clause is governed by the New York

Convention.  Nor does an independent review of the relevant law lead to such a conclusion.  For

an agreement to arbitrate to be "governed by" the New York Convention, the locus of the

arbitration must be a country that is a signatory to the New York Convention.  Khan v. Parsons

Global Servs., Ltd., No. 03-1574, 2007 WL 960115, at *7 (D.D.C. Mar. 30, 2007) (citing

Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002)); see also Walker &

Zanger (West Coast) Ltd. v. Stone Design S.A., 4 F. Supp. 2d 931, 936 (C.D. Cal. 1997);

Ascension Orthopedics, Inc. v. Curasan AG, No. A-06-CA-424 LY, 2006 WL 2709058, at *2

(W.D. Tex. Sept. 20, 2006).  As previously discussed, Agrocomplect does not allege the parties

intended any arbitration arising out of the Contract to be held in the United States – or any other

country that is a signatory to the New York Convention, see Compl. – and the Forum Selection

Clause and Choice of Law Clause, see Compl. ¶ 6, strongly indicate the parties' intent that any

such arbitration take place in Iraq.[8]  Because Iraq is not a signatory, the Arbitration Clause is not

"governed by" the New York Convention, rendering §1605(a)(6)(B) inapplicable.  This Court

therefore lacks jurisdiction over Agrocomplect's claim to compel arbitration pursuant to

§1605(a)(6).[9]

## II.    AGROCOMPLECT'S CLAIM IS BARRED AS A MATTER OF LAW BY ITS RELEASE OF THE REPUBLIC AND IS TIME-BARRED

Even if this Court had subject matter jurisdiction over Agrocomplect's claims, which it

does not, and even if Agrocomplect's claim for breach of contract were not subject to arbitration,

which it is, this claim is both barred as a matter of law by Agrocomplect's release of the

Republic, and untimely on the face of the Complaint.

Because Agrocomplect refers to and alleges its participation in the Iraq debt restructuring

process administered by IDRO, Compl. ¶¶ 23-24, the operative documents governing that

process can be properly considered by the Court on a motion to dismiss for failure to state a

claim upon which relief can be granted.  See Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C.

1999) (in deciding motion to dismiss under Rule 12(b)(6), court may consider "a document [that]

is referred to in the complaint and [that] is central to plaintiff's claim…attached to the motion

papers…without converting the motion to one for summary judgment"); New York State Bar

Ass'n v. FTC, 276 F. Supp. 2d 110, 114 (D.D.C. 2003) (document not attached to complaint

could be considered on motion to dismiss under Rule 12(b)(6) where it was central to plaintiffs'

claims, was referenced in the complaints, and substantive content of document was incorporated

---

[8]    It is hardly conceivable that a Bulgarian company under the communist regime that existed in Bulgaria in 1985 when the Contract was signed, or Saddam Hussein's Iraq, would ever have agreed to arbitrate their disputes in the United States.

[9]    In the unlikely event the Court determines it possesses jurisdiction over plaintiff's claims, defendant requests, in the alternative, that the Court refer the matter to arbitration pursuant to the Arbitration Clause and stay or dismiss the present action pending the outcome of such arbitration pursuant to § 3 of the Federal Arbitration Act. See 9 U.S.C. § 3.  Indeed, given the Complaint's concession that the parties agreed in writing to arbitrate all disputes, this can be the only possible outcome of this case short of dismissal for lack of subject matter jurisdiction.

into plaintiffs' complaints).  These documents demonstrate on their face that Agrocomplect's claim, which it admits that it submitted to IDRO, was purchased and paid for under the terms of the Iraq debt restructuring, and that Agrocomplect as an integral part of that submission released any and all further claims against Iraq.  See Ex. B at 2; Ex. A at §§ 5, 8(ii) and 15.  Having released its claims and received the consideration for such release, Agrocomplect is barred as a matter of law from asserting them here, or anywhere else.  See Mwabira-Simera v. Sodexho Marriot Mgmt. Servs., Nos. 04-0538, 04-1240, 2005 WL 1541041, at *2 (D.D.C. June 30, 2005) (granting defendant's motion to dismiss where plaintiff had signed release agreement and received benefit of agreement); Mikkilineni v. Commonwealth of Pa., Nos. 03-5239, 03-5285, 2004 WL 2671647, at *1 (D.C. Cir. Nov. 22, 2004) (affirming district court dismissal of claim as barred by "full and final release" signed by plaintiff).

Moreover, the face of Agrocomplect's Complaint makes clear that even if this claim had not been released, it is time-barred.  In the District of Columbia, courts apply the law of the forum to determine if a claim is barred by the statute of limitations, including in cases arising under the FSIA.  Termorio, 421 F. Supp. 2d at 97.  "The statute of limitations for breach of contract claims is three years from 'the time the right to maintain the action accrues.'"  Id. (quoting D.C. Code § 12-301(7) (2006)).  Plaintiff alleges that its loss of tangible property occurred "[o]n or about January 1991," Compl. ¶ 15, and that Iraq failed to render payment under the Contract although plaintiff had "completed and handed over" eight of nine zones to be completed under the Contract by August 2, 1990.  Compl. ¶¶ 10, 12, 18.  Because the alleged breach of contract occurred over sixteen years ago, the statute of limitations has run, and the plaintiff's complaint should be dismissed.

15

Accordingly, while the Court need not (and indeed cannot) reach these issues because it lacks subject matter jurisdiction over this action, if it nonetheless were to do so, Agrocomplect's Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state an actionable claim.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Republic of Iraq respectfully requests that this Court dismiss the Complaint.

Dated: May 21, 2007

Respectfully submitted,

/s/ Matthew D. Slater_____
Matthew D. Slater (D.C. Bar # 386986)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
Facsimile:   (202) 974-1999


Jonathan I. Blackman
Lisa M. Coyle
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:   (212) 225-3999

Attorneys for Defendant The Republic of Iraq

16

## CERTIFICATE OF SERVICE

I, Emily C. Capehart, assistant managing clerk at Cleary Gottlieb Steen & Hamilton LLP, hereby certify that:

On May 21, 2007, a copy of the foregoing Motion to Dismiss and accompanying papers, was served by electronic transmission through the Court's CM/ECF System on the following parties:

> Sylvia J. Rolinski
> Danielle M. Espinet
> Rolinski & Suarez, LLC
> 14915 River Road
> Potomac, Maryland 20854
> srolinski@rolinski.com
> Attorney for Agrocomplect, AD
>
> Philip M. Musolino
> Musolino & Dessel
> 1615 L Street, N.W., Suite 440
> Washington, D.C. 20036
> pmusolino@musolinoanddessel.com
> Attorney for Agrocomplect, AD

Dated: May 21, 2007                    /s/ Emily C. Capehart
                                          Emily C. Capehart

17

# Exhibit A





# THE REPUBLIC OF IRAQ

## INVITATION TO TENDER CLAIMS FOR CASH PURCHASE AND CANCELLATION

**February 9, 2006**

Citigroup Global Markets Inc.
J.P. Morgan Securities Inc.,
as Global Coordinators

You are reminded that this Invitation has been delivered to you on the basis that you are a person into whose possession this Invitation may lawfully be delivered in accordance with the laws of the jurisdiction in which you are located, and you may not, nor are you authorized to, deliver this Invitation to any other person if doing so would result in a violation of the applicable laws of such jurisdiction.  This Invitation does not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law.

**THE REPUBLIC OF IRAQ**

**INVITATION TO TENDER CLAIMS
FOR CASH PURCHASE AND CANCELLATION**

**TABLE OF CONTENTS**

| Section | Page |
|---|---|
| 1. Invitation to Tender | 1 |
| 2. Settlement Agent | 1 |
| 3. Reconciliation; Interest Calculation | 2 |
| 4. Currencies | 2 |
| 5. Purchase Price | 3 |
| 6. Tender Procedures and Acceptance by Iraq of a Tender | 4 |
| 7. Holder Representations and Warranties | 4 |
| 8. Effect of the Tender | 6 |
| 9. Indemnity for Failure to Deliver Negotiable Instruments | 8 |
| 10. Closing | 8 |
| 11. Regulatory, Accounting and Tax Consequences | 9 |
| 12. Preservation of Defenses | 9 |
| 13. Litigated Claims | 10 |
| 14. Unasserted Claims | 10 |
| 15. Unreconciled Claims; Arbitration Mechanism | 11 |
| 16. More Information | 12 |
| 17. Governing Law; Submission to Jurisdiction; Waiver of Immunity | 12 |

EXHIBIT A:      ARBITRATION PROCEDURES
EXHIBIT B:      FORM OF TENDER
EXHIBIT C:      FORM OF ACCEPTANCE OF TENDER
SCHEDULE I:     STATEMENT OF RECONCILED ELIGIBLE CLAIMS
SCHEDULE II:    STATEMENT OF UNRECONCILED CLAIMS

**<u>Guide to Defined Terms</u>**

Defined terms used in this Invitation are first defined in the Section of the Invitation identified below.

| <u>Term</u> | <u>Defined in Section</u> |
|---|---|
| Acceptance Date | 6 |
| Arbitrated Claims Closing Date | 10 |
| Arbitration Mechanism | 8(x) |
| Closing Date | 10 |
| Dollars | 4 |
| Invitation | 1 |
| Iraq | 1 |
| Judgment | 13 |
| Pending Litigation | 13 |
| Purchase Price | 5 |
| Purchased Claims | 10 |
| Reconciled Eligible Claims | 1 |
| Reconciliation Agent | 3 |
| Reconciliation Methodology | 3 |
| RFI | 3 |
| Settlement Agent | 2 |
| Settlement Currency | 4 |
| Syndicate Agent | 8(iii) |
| Tender | 1 |
| Tender Due Date | 6 |
| Unasserted Claims | 1 |
| UNCC | 7(xiv) |
| Unreconciled Claims | 3 |
| Website | 3 |
| Yen | 4 |

The following defined terms used in this Invitation are defined in the paragraph of the document captioned "Reconciliation Methodology" available at www.eyidro.com:

**<u>Term</u>**

Holder

Interest Accrual Date

Set-Off

Specified Obligor

**THE REPUBLIC OF IRAQ**

**INVITATION TO TENDER CLAIMS**
**FOR CASH PURCHASE AND CANCELLATION**

1.    <u>Invitation to Tender</u>

On the terms and subject to the conditions set forth in this invitation (the "<u>Invitation</u>"), the Republic of Iraq, acting through its Ministry of Finance ("<u>Iraq</u>"), hereby invites the entity identified as the Holder in Schedule I attached to this Invitation to tender for cash all of the Reconciled Eligible Claims listed in Schedule I (the "<u>Reconciled Eligible Claims</u>") for purchase by Iraq and simultaneous cancellation, at the Purchase Price described below (the "<u>Tender</u>").

This is the final Invitation you will receive in respect of your claims. No further work will be undertaken on the reconciliation of any claims of a Holder that elects to decline this Invitation, or does not tender its claims by the Tender Due Date (as defined below). No further offers to settle any such claims on different terms will be made or will be entertained. Pursuant to Section 12 below, all legal defenses (including statute of limitations defenses) that may be available to Iraq or any other obligor have been expressly reserved and will be vigorously asserted in any attempt to enforce any such claim at law.

2.    <u>Settlement Agent</u>

Iraq has engaged Citibank, N.A. to act as the Settlement Agent (the "<u>Settlement Agent</u>") for the purposes of this Invitation. The Settlement Agent will perform the functions ascribed to it in this Invitation. The Settlement Agent will perform its functions in connection with this Invitation principally through its office located at the following address:

Settlement Agent, Agency and Trust – Mail Drop cgc-21-54
Citibank N.A. Agency and Trust
21st Floor
Citigroup Centre
33 Canada Square
London
E14 5LB
United Kingdom
Tel: +44 20 7508 3867
Fax: +44 20 7508 3866
Email: exchange.gats@citigroup.com

1

Citibank, N.A., in acting as the Settlement Agent, is acting solely as the agent of Iraq and does not assume any relationship of agency or trust with any Holder in connection with this transaction or assume any obligations to any Holder. The Settlement Agent shall not be liable for any recital or statement contained herein or in any other communication from Iraq regarding the Invitation.

3.    <u>Reconciliation; Interest Calculation</u>

This Invitation has been preceded by a debt reconciliation process performed by Ernst & Young, Iraq's debt reconciliation agent (the "<u>Reconciliation Agent</u>"). This process involved the solicitation by the Reconciliation Agent (on behalf of Iraq) of information concerning certain categories of claims against Iraq, other Iraqi public sector obligors and certain other parties as described in the Request for Information posted on the Ernst & Young website (www.eyidro.com) (the "<u>Website</u>") on December 9, 2004 (the "<u>RFI</u>"). The Reconciled Eligible Claims set out in Schedule I to this Invitation reflect claims meeting the eligibility criteria described in the RFI that were submitted by the Holder and successfully reconciled by the Reconciliation Agent (including any applicable adjustment for set-offs against the claims).

If any claims meeting the eligibility criteria of the RFI were submitted by the Holder in response to the RFI but could not be reconciled by the Reconciliation Agent by the date of this Invitation, these are listed on Schedule II to this Invitation ("<u>Unreconciled Claims</u>").

If any of the claims listed on either Schedule I or Schedule II to this Invitation seem inappropriately included, please contact the Settlement Agent at the address or telephone number set forth in Section 2 above.

Iraq will only recognize as interest for purposes of this Invitation the amounts shown opposite each Reconciled Eligible Claim in Schedule I to this Invitation. This calculation of interest has been carried out according to the methodology described in the document captioned "Reconciliation Methodology," dated July 6, 2005 (the "<u>Reconciliation Methodology</u>"), available on the Website. Such amounts may differ from amounts resulting from the formula for calculating contractual and late interest contained in the underlying contract, instrument or judgment evidencing the Reconciled Eligible Claim, if any.

4.    <u>Currencies</u>

For purposes of purchasing any Reconciled Eligible Claims that are tendered and accepted in connection with this Invitation, Iraq will make payments of the Purchase Price only in United States Dollars ("<u>Dollars</u>"), Euros or Japanese Yen ("<u>Yen</u>"), as applicable. Accordingly, Reconciled Eligible Claims submitted to the

debt Reconciliation Agent in a currency other than Dollars, Euros or Yen were translated from their original currencies into Euros or Dollars in accordance with the procedures set forth in the Reconciliation Methodology.  The Purchase Price for claims tendered and accepted for purchase hereunder that are denominated in Dollars, Euros or Yen will be paid in their original currency.  The currency you will receive is referred to herein as the "Settlement Currency".

5.      Purchase Price

        The Purchase Price (the "Purchase Price") for all Reconciled Eligible Claims tendered and accepted in connection with this Invitation is an amount in the Settlement Currency equal to 10.25% of the aggregate amount of such Reconciled Eligible Claims (principal plus calculated interest accrued from and including the Interest Accrual Date to and excluding the Closing Date applicable to those Reconciled Eligible Claims) specified in Schedule I (rounded to the nearest single currency unit).  The Holder should note that although the Purchase Price is expressed as a fixed percentage of the reconciled principal and calculated interest amount of Reconciled Eligible Claims, payment of the Purchase Price by Iraq to the Holder will effect the unconditional and irrevocable purchase and cancellation of all amounts (including principal, contractual interest, late or penalty interest, fees, indemnities and any other amounts of whatever description) payable in respect of such Reconciled Eligible Claims and will release Iraq, any other obligors and any guarantors from any obligations on the Reconciled Eligible Claims.

        As set forth in the Reconciliation Methodology, any Set-Off exercised by the Holder (or a predecessor in title) against the property of a party other than the Specified Obligor that reduced the amount of a Reconciled Eligible Claim prior to the purchase and simultaneous cancellation by Iraq of that claim, will reduce the Purchase Price payable to the Holder for that claim by an amount proportional to the amount of such Set-Off.

        The Purchase Price for Reconciled Eligible Claims accepted for purchase in connection with this Invitation will be paid on the Closing Date in the Settlement Currency.  The aggregate Purchase Price for all of the Holder's accepted Reconciled Eligible Claims denominated in each Settlement Currency shall be paid by a single wire transfer for each Settlement Currency in same-day funds to such bank account(s) as the Holder shall specify to the Settlement Agent in the Holder's Administrative Information accompanying the Holder's Tender or, at the Settlement Agent's option in the case of a payment of less than US$500,000 (or its equivalent in other currencies), by check mailed to such Holder at its address shown on the Holder's Administrative Information.

3

6.    <u>Tender Procedures and Acceptance by Iraq of a Tender</u>

If the Holder wishes to respond to this Invitation, it must do so by 5:00 P.M. (London time) on March 13, 2006 (the "<u>Tender Due Date</u>") by sending or delivering to the Settlement Agent a Tender in the form of Exhibit B hereto covering all, <u>but not less than all</u>, of the Reconciled Eligible Claims of such Holder listed on Schedule I together with all documentation required by Section 8(vii) and Section 13 below.

**If the Holder does not submit a Tender by the 5:00 P.M. (London time) on the Tender Due Date, Iraq shall deem this Invitation to have been rejected by the Holder in its entirety and no further Invitation or settlement offer will be sent to such a Holder.  There is no option to defer this offer.**

Tenders that comply with the requirements of this Invitation will be accepted by Iraq.  If the Tender does not strictly conform to those requirements it may be rejected by Iraq in its sole discretion.  If any Tender is rejected, any negotiable instruments evidencing the Reconciled Eligible Claims that were delivered to the Settlement Agent pursuant to Section 8(vii) below will be promptly returned to the Holder.

The Settlement Agent shall confirm to the Holder the acceptance of the Tender by Iraq not later than March 27, 2006 (the "<u>Acceptance Date</u>") by sending a notice of acceptance in the form of Exhibit C.  If the Holder submits the Tender but does not receive notice of receipt and acceptance from the Settlement Agent within fifteen calendar days after submission, the Holder should promptly contact the Settlement Agent.

Upon acceptance by Iraq of the Tender, such Tender will, together with the terms of this Invitation, constitute a binding contract between Iraq and the Holder for the sale, purchase and cancellation of the Reconciled Eligible Claims, enforceable in accordance with the terms hereof.

In the event any of the Reconciled Eligible Claims listed on Schedule I have been, or subsequently are, asserted against a Specified Obligor by a bilateral (governmental) creditor, by its acceptance of the Purchase Price on the Closing Date, the Holder agrees to indemnify and hold that Specified Obligor harmless against any loss that may result therefrom.

7.    <u>Holder Representations and Warranties</u>

By submitting the Tender, the Holder represents and warrants to each of Iraq, the Global Coordinators, the Reconciliation Agent and the Settlement Agent, as of the date of the Tender and as of the Closing Date, as follows:

       (i)       it is the record holder of the Reconciled Eligible Claims identified in Schedule I (or would be the record holder had all required consents to the assignment of the Reconciled Eligible Claims to the Holder been obtained) and has all legal right, title and authority to sell such claims free from all liens, encumbrances or rights of third parties therein and to give a full and complete discharge and release of all amounts relating to such Reconciled Eligible Claims;

       (ii)      it has the power and authority to submit the Tender and to receive the Purchase Price as the full consideration for the sale and cancellation of all amounts relating to the Reconciled Eligible Claims covered by the Tender;

       (iii)     in submitting the Tender it will not, to its knowledge, contravene any applicable law, regulation or contractual restriction or any order by any tribunal having jurisdiction over the Holder or any Reconciled Eligible Claim;

       (iv)     it has taken all necessary action to authorize the execution and delivery of the Tender, and the performance of its obligations under the Tender and this Invitation;

       (v)      the Tender, if accepted by Iraq in the manner described in Section 6 above, constitutes the Holder's valid and binding obligation, enforceable against the Holder in accordance with the terms of the Tender and this Invitation;

       (vi)     any governmental authorizations or approvals of any kind required for the validity or enforceability against the Holder of its obligations under the Tender and this Invitation have been obtained or performed and are valid and subsisting in full force and effect;

       (vii)    on the Closing Date, the Reconciled Eligible Claims covered by the Tender will be sold to Iraq and cancelled free from all liens, encumbrances or rights of third parties therein;

       (viii)   the claims that are tendered meet the criteria for eligibility set forth in the RFI;

       (ix)     it holds no claims meeting the eligibility criteria of the RFI that were not identified in its response to the RFI (including any supplement thereto);

       (x)      the statements set forth in the Holder's  response to the RFI, as amended or supplemented, were true and accurate as of the date of such response or supplement;

(xi)    other than as previously disclosed to the Reconciliation Agent, neither the Holder nor, to the Holder's knowledge, any predecessor in title has exercised any set-off or other debit against the value of any Reconciled Eligible Claim;

(xii)    other than as previously disclosed to the Reconciliation Agent, the Holder does not hold any balances or other accounts for the benefit of (whether subject to a banker's lien, any other security interest or any other legal constraint) any Specified Obligor;

(xiii)    it has not been charged with or convicted of terrorism or money laundering nor charged with or convicted of any crime with respect to the Reconciled Eligible Claims by any tribunal of competent jurisdiction; and

(xiv)    none of the Reconciled Eligible Claims identified in Schedule I were eligible for consideration by the United Nations Compensation Commission (the "UNCC") established pursuant to United Nations Security Council Resolution No. 692, dated as of May 20, 1991.

8.    Effect of the Tender

By submitting the Tender, the Holder irrevocably agrees to the terms and conditions of this Invitation.  As part thereof, the Holder:

(i)    agrees that it will continue to be the record holder of such Reconciled Eligible Claims (subject, where applicable, to the clarification in the parenthetical text in Section 7(i) above) from the date of the Tender to and including the Closing Date.  The Holder agrees that any purported transfer of any tendered Reconciled Eligible Claim in violation of the foregoing covenant will be void and of no effect;

(ii)    agrees to receive the applicable Purchase Price on the Closing Date as the full consideration for the sale to Iraq and cancellation of the Reconciled Eligible Claims listed in the Tender and in full discharge, release and satisfaction of all claims (including claims previously reduced to a Judgment (as defined in Section 13 below)) for principal, contractual interest, late or penalty interest, indemnities, fees and any other amounts of whatever description then due in respect of the Reconciled Eligible Claims tendered by such Holder (regardless of whether any adjustment has been made to a claim or to the Purchase Price to account for a set-off effected by the Holder or a predecessor in title), and agrees to release and indemnify Iraq and any other obligor or guarantor in respect thereof from any and all claims by the Holder (or any other person claiming through the Holder) arising under such Reconciled Eligible Claims or any contract or Judgment evidencing such Reconciled Eligible Claims;

(iii)    agrees and authorizes the Settlement Agent to instruct the relevant syndicate agent (if any) under each syndicated contract relating to such Reconciled Eligible Claims (each a "<u>Syndicate Agent</u>") to mark its records to reflect the cancellation of the Reconciled Eligible Claims upon payment of the Purchase Price to the Holder on the Closing Date and agrees that the Settlement Agent in such capacity and the Syndicate Agent shall be fully indemnified by the Holder and held harmless for acting upon such instruction;

(iv)    agrees to provide the Settlement Agent with all relevant information (including addresses and fax numbers) pertaining to the Syndicate Agents so that the Settlement Agent may send notices to such Syndicate Agents confirming the instructions provided by the Holder in the above covenant (Section 8(iii));

(v)    agrees that Iraq and any other obligor or guarantor in respect of Reconciled Eligible Claims tendered hereunder, the Settlement Agent, the Global Coordinators and the Reconciliation Agent shall not, in any way, be liable to the Holder for any loss, liability, payment or expense incurred by such Holder as a result of any claim that may be brought against such Holder by any third party claiming to have an interest in such Reconciled Eligible Claims or the proceeds of the Purchase Price paid in respect thereof;

(vi)    confirms that in evaluating this Invitation and in making its decision whether to participate therein by submitting a Tender, the Holder has made an independent appraisal of the matters referred to herein and in any related communications from Iraq and is not relying on any statement, representation or warranty, express or implied, made to it by Iraq (other than as expressly set forth in this Invitation), the Settlement Agent, the Global Coordinators or the Reconciliation Agent, or by any of the partners, directors, officers, agents, employees or affiliates of any of them;

(vii)    warrants and agrees for each Reconciled Eligible Claim tendered that all negotiable instruments pertaining to such Reconciled Eligible Claim will have been delivered to the Settlement Agent prior to the Tender Due Date.  If the Holder fails, for any reason, to deliver any such negotiable instrument to the Settlement Agent prior to the Tender Due Date, the Holder shall be deemed to have given the indemnity set forth in Section 9 below;

(viii)    warrants and agrees for each Reconciled Eligible Claim tendered and each Unreconciled Claim that if any such claims are (i) covered by or merged into a Judgment (as defined in Section 13 below) or (ii) the subject of any Pending Litigation (as defined in Section 13 below), all documents required by Section 13 will have been delivered to the Settlement Agent prior to the Tender Due Date;

(ix)    agrees (subject only to the resolution of any Unreconciled Claims in accordance with Section 15 below) that the receipt of the Purchase Price with respect to the Reconciled Eligible Claims that are the subject of the Tender on the Closing Date will fully discharge and satisfy any and all claims for principal, contractual interest, late or penalty interest, indemnities, fees and any other amounts of whatever description then due, or thereafter falling due, in respect of any Unasserted Claims (as defined in Section 14 below) and will release Iraq or such obligor or guarantor of any Unasserted Claim from such obligation as provided in Section 14 below;

(x)    agrees that any claim that remains unreconciled and is shown as such on the Holder's Statement of Unreconciled Claims will, no later than the Tender Due Date, either be submitted by the Holder to the Arbitration Mechanism described in Exhibit A hereto (the "Arbitration Mechanism") pursuant to Section 15 below, or be withdrawn by the Holder and treated as an Unasserted Claim covered by the discharge and release contained in Section 8(ix) above; and

(xi)    agrees that the Tender will be irrevocable.

9.    Indemnity for Failure to Deliver Negotiable Instruments

If the instrument evidencing any Reconciled Eligible Claim is in the form of a negotiable instrument that the Holder fails, for any reason, to deliver to the Settlement Agent prior to the Tender Due Date as provided in this Invitation, the Holder thereof shall automatically be deemed to have given the following indemnity in respect of that instrument:

The Holder, by its acceptance of the Purchase Price on the Closing Date, hereby covenants and agrees to indemnify each of Iraq, the Specified Obligor under such instrument and the Settlement Agent, and to hold each of the foregoing harmless against, any loss, liability or expense (including legal expense) incurred by any of them arising out of, or in connection with, any subsequent assertion of a claim (including any exercise of a right of set-off or counterclaim) by any person based on that instrument or the underlying Reconciled Eligible Claim.

10.    Closing

A Closing in respect of this Invitation is expected to occur on or about March 30, 2006 (the "Closing Date").  Iraq may, in its sole discretion, revise the Closing Date, as it deems appropriate.

A final closing date for the settlement of commercial claims, following completion of the arbitration process, is expected to occur on or about July 15, 2006 (the "Arbitrated Claims Closing Date").

Upon acceptance of the Tender by Iraq, the Reconciled Eligible Claims covered by that Tender will be purchased by Iraq and simultaneously cancelled on the Closing Date.

Payment of the Purchase Price for the Reconciled Eligible Claims tendered and accepted in connection with this Invitation (the "Purchased Claims") will be made by the Settlement Agent on the Closing Date to the Holder of Purchased Claims in the manner described in Section 5 above. All such payments shall be made free and clear of any Iraqi taxes, including withholding taxes or similar levies.

At the time of the closing on the Closing Date, each tendering Holder (and any financial institution acting for the benefit of such Holder) shall be fully released and discharged by Iraq or any other Iraqi public sector obligor from any liability in connection with any performance bond, financial guarantee, counterguarantee or similar financial undertaking issued in respect of a project related to a Purchased Claim of that Holder.

11.    Regulatory, Accounting and Tax Consequences

The making of the Tender and the acceptance of payment for Purchased Claims may have accounting, tax and regulatory consequences to the Holder. This Invitation does not, and does not purport to, address these consequences, which may vary in different jurisdictions, and the Holder should consult its own independent accounting, tax and legal advisors in the relevant jurisdiction(s) concerning these matters.

12.    Preservation of Defenses

Some or all of the Reconciled Eligible Claims listed on Schedule I or Unreconciled Claims listed on Schedule II may not be enforceable against the obligor or any guarantor thereof as a result of the operation of a statute of limitations, or the obligor/guarantor thereunder may have available other defenses to the legal enforcement of such claim. Nothing in this Invitation, or in any communication from the Settlement Agent, the Reconciliation Agent or Iraq relating to this Invitation or the reconciliation process that preceded this Invitation, constitutes an admission of any such claim, an acknowledgment that any such claim has been revived or reinstated, or an express or implied promise to pay any such claim (or part thereof) other than, in the case of tendered and accepted Reconciled Eligible Claims, to pay the Purchase Price therefor in accordance with the terms of this Invitation. All defenses available to Iraq or an obligor or guarantor of a Reconciled Eligible Claim or an Unreconciled Claim relating to any applicable statute of limitations or otherwise are expressly preserved until such claim is fully discharged and cancelled in connection with this Invitation. This Invitation may not be relied upon as evidence of the willingness or ability of Iraq or any such obligor or

guarantor to pay Reconciled Eligible Claims or any other claims that are not tendered pursuant to this Invitation or are not accepted by Iraq for purchase hereunder.

13.     Litigated Claims

If any Reconciled Eligible Claims or Unreconciled Claims are (i) covered by or merged into a court judgment or arbitral award (other than a UNCC award) (a "Judgment") or (ii) the subject of any pending litigation or arbitral proceeding in any jurisdiction ("Pending Litigation"), the Holder shall deliver to the Settlement Agent, not later than the Tender Due Date, all appropriate documents or court filings that will be required to discharge and cancel in full the Judgment corresponding to that Reconciled Eligible Claim or Unreconciled Claim (or that portion of the Judgment in which the Holder has an interest), or to withdraw, dismiss and discontinue with prejudice (with each party to bear its own legal costs and expenses) any Pending Litigation in full and final settlement thereof (to the extent that the Holder is a party thereto), together with the Holder's written authorization for Iraq (or its legal counsel) to file such documents with any court or tribunal that issued or recognized a Judgment, or before which a Pending Litigation is pending, following the closing on the Closing Date.

The Holder agrees, promptly upon request of Iraq or the Settlement Agent, to take such other steps or give such other notifications as may be required to ensure that Iraq, or any Iraqi obligor or guarantor in respect of a Reconciled Eligible Claim or Unreconciled Claim, shall have no further liability to the Holder under a Judgment or in respect of a Pending Litigation.

14.     Unasserted Claims

The RFI to which the Holder responded asked the Holder to identify all claims owned by it that meet the eligibility criteria set out in the RFI.  In processing responses to the RFI, Iraq and the Reconciliation Agent have assumed that the Holder complied with this request and that, to the extent any claims meeting the eligibility criteria of the RFI held by the Holder on the date of its response to the RFI (or any supplement thereto) were not identified in its response to the RFI, or were initially identified but were subsequently withdrawn from the Holder's submission to the Reconciliation Agent, the Holder has decided to waive its right to assert a claim for payment or settlement of those amounts.  Such unasserted claims are referred to herein as "Unasserted Claims".

Accordingly, if a Holder's Tender of Reconciled Eligible Claims pursuant to this Invitation is accepted by Iraq and the Holder receives the Purchase Price corresponding to those Reconciled Eligible Claims on the Closing Date then, pursuant to Section 8(ix), the Holder (i) shall be deemed to have simultaneously cancelled and discharged in full all amounts (of whatever description) that may be

payable in respect of any Unasserted Claims, effective as of the Closing Date and (ii) shall have released Iraq and any obligor or guarantor of the Unasserted Claims from such obligation.  The Holder further agrees not to attempt to sell, transfer or encumber any such Unasserted Claim following the date of Tender, or to take any action (including set-off and other similar self-help remedies) to enforce any such Unasserted Claim.

15.    Unreconciled Claims; Arbitration Mechanism

Schedule II to this Invitation lists any claims submitted for reconciliation by the Holder in response to the RFI that could not be successfully reconciled by the Reconciliation Agent by the date of this Invitation.  Any claim that is identified on the Holder's Statement of Unreconciled Claims will, by the Tender Due Date, at the Holder's election, either be submitted to the Arbitration Mechanism or withdrawn by the Holder and treated as an Unasserted Claim covered by the discharge and release set out in Section 14 above.

This election may be made separately for each Unreconciled Claim shown on Schedule II.

**If the Chairperson for the Arbitration Mechanism does not receive a written notice from the Holder specifying its election with respect to each Unreconciled Claim by the Tender Due Date, the Holder agrees that any Unreconciled Claim not covered by such an election will automatically be cancelled effective on the Closing Date, and the Holder irrevocably agrees that such claim will be treated as an Unasserted Claim covered by the discharge and release set out in Section 14 above.**

The arbitral award for any Unreconciled Claim that the Holder elects to refer to the Arbitration Mechanism will finally determine the existence, principal amount and maturity of such Unreconciled Claim and will be binding on both Iraq and the Holder, and shall not be subject to appeal.  If that arbitral award is in favor of the Holder, the claim (as so awarded) shall thereafter be treated (without any action being taken by the Holder) for all purposes as a Reconciled Eligible Claim (with interest accrued to the Arbitrated Claims Closing Date) tendered by the Holder in accordance with its original Tender that has been accepted by Iraq and will be placed in line for purchase by Iraq on the Arbitrated Claims Closing Date pursuant to the terms, conditions and procedures set out in this Invitation.  If the award is in favor of Iraq, the disallowed claim (or any disallowed portion thereof) shall be treated as an Unasserted Claim covered by the discharge and release contained in Section 14 above.

11

16.    <u>More Information</u>

Questions and requests for assistance may be directed to the Settlement Agent at its address and telephone number set forth in Section 2 of this Invitation.  Additional copies of this Invitation and any related materials may be obtained from the Settlement Agent.

Holders with general enquiries relating to the terms of the Invitation may contact the Global Coordinators using the following contact details:

<u>Citigroup Global Markets Inc.</u>

Tel: +44 207 986 8969
Email: liabilitymanagement.europe@citigroup.com

<u>J.P. Morgan Securities Inc.</u>

Tel: +44 207 777 0600
Email: iraq.com.claims@jpmorgan.com

17.    <u>Governing Law; Submission to Jurisdiction; Waiver of Immunity</u>

This Invitation, the Tender, and any acceptance or rejection thereof by Iraq, shall be governed by and construed in accordance with the law of the State of New York.

The Holder, by submitting a Tender in response to this Invitation, and Iraq, each irrevocably submits to the jurisdiction of any New York State or federal court sitting in the Borough of Manhattan, the City of New York, in any suit, action or proceeding relating to this Invitation or that Tender (it being understood, however, that disputes concerning Unreconciled Claims shall be resolved exclusively pursuant to the Arbitration Mechanism described elsewhere in this Invitation).

Iraq hereby waives irrevocably any immunity from jurisdiction (but not execution or attachment or process in the nature thereof) to which it might otherwise be entitled in any action arising out of or based on this Invitation that may be instituted by the Holder in any New York State or United States federal court sitting in the Borough of Manhattan, the City of New York.  The submission to jurisdiction and waiver of immunity by Iraq contained herein is for the exclusive benefit of the Holder and shall not extend to any other person.

## ARBITRATION PROCEDURES

### Introduction

This Exhibit contains the procedures by which a determination as to the existence (including ownership), the principal amount and/or the maturity date (as the case may be) of one or more Unreconciled Claims may be submitted by a Holder (the "Claimant") for arbitration and final decision by an independent arbitrator.  Capitalized terms used but not defined in this Exhibit have the meanings given to those terms in the Invitation.

Arbitration pursuant to these Arbitration Procedures is the sole remedy for a Claimant that wishes to pursue a claim in respect of one or more Unreconciled Claims.  **If a Holder elects <u>not</u> to submit an Unreconciled Claim to arbitration pursuant to these Arbitration Procedures by the Tender Due Date, that Unreconciled Claim shall be deemed cancelled effective on the Closing Date as provided in Section 15 of the Invitation**.

It is anticipated by Iraq that arbitrations pursuant to these Arbitration Procedures will commence in approximately March, 2006.

### Arbitration Panel

Each arbitration pursuant to these Arbitration Procedures shall be conducted by a sole arbitrator chosen by the Chairperson from an Arbitration Panel of independent experts recommended by the Secretariat of the International Court of Arbitration of the International Chamber of Commerce (the "Panel").  The Chairperson shall be chosen by Iraq and shall not serve as an arbitrator.

Members of the Panel will be chosen for their experience and independence.  At least two members of the Panel shall be fluent in Arabic.  All members of the Panel shall be fluent in English.  At the request of the Chairperson, the Secretariat of the International Court of Arbitration of the International Chamber of Commerce shall be asked to recommend additional members of the Panel, or to fill any vacancies on the Panel, with similarly qualified individuals.

These Arbitration Procedures shall govern all arbitrations conducted by members of the Panel.  The Chairperson, in consultation with the Panel, shall have the discretion to supplement these Procedures if he or she feels this would be in the best interest of an efficient arbitration process by posting such supplements on the Website.

<u>Notice of Arbitration</u>

A Claimant wishing to commence an arbitration for one or more Unreconciled Claims held by that Claimant must, by the Tender Due Date, submit a written notice (a "<u>Notice of Arbitration</u>") to the Chairperson and the Reconciliation Agent containing the following information:

(i)     the name and contact details of the Claimant;

(ii)    a list of all Unreconciled Claims for which arbitration is sought, identified by the caption of the debt instrument(s) and the identification number assigned by the Reconciliation Agent to each such claim;

(iii)   a copy of the related Statement of Unreconciled Claims, together with the Reconciliation Agent's indication of the reason for its inability to reconcile;

(iv)    a statement as to whether the Claimant wishes the arbitration to be conducted in English or in Arabic;

(v)     a statement that the Claimant understands and accepts that the Award rendered by the Arbitrator in respect of each Unreconciled Claim submitted for arbitration shall be final, non-appealable and binding; and

(vi)    a statement that the Claimant agrees to participate in an arbitration in accordance with these Arbitration Procedures.

The Settlement Agent will contact each Holder prior to the Tender Due Date regarding the form of Notice of Arbitration, the form of list of all Unreconciled Claims for which arbitration is sought and the addresses of the Chairperson and the Reconciliation Agent for submissions.

Prior to the commencement of the arbitration period, the Chairperson shall assign each arbitration to a member of the Panel (for that arbitration, the "<u>Arbitrator</u>") who has certified to the Chairperson that he/she is independent of each of the parties to the Arbitration and intends to remain so; and to the best of his/her knowledge, there are no facts or circumstances, past or present, that need be disclosed because they might be of such nature as to call into question his/her independence in the eyes of any of the parties to the Arbitration.  The Arbitrator shall promptly identify himself/herself to the parties by telephone, electronic mail or in writing, and shall provide the parties with the address and contact details of the Arbitrator.

Parties

The only parties to an arbitration shall be Iraq and the Claimant. The Settlement Agent, the Global Coordinators, any Syndicate Agent and the Reconciliation Agent shall not be joined as parties or witnesses to any Arbitration.

Written Submissions

Within 15 calendar days of being assigned an arbitration, the Arbitrator shall notify the Claimant and Iraq in writing of the date on which written submissions by the Claimant and Iraq are due (which date shall be approximately 45 days following the date of the Arbitrator's notice) (the "Submission Date").

Written submissions by Claimants and other communications to or from Iraq, the Arbitrator or Claimants may be made in English or Arabic, as specified by the Claimant in the Notice of Arbitration. A written submission by the Claimant shall be comprised of a brief statement of the Claimant's position, copies of relevant documents (translated into English if the arbitration is to be conducted in English; or into English or Arabic if the arbitration is to be conducted in Arabic) and (at the option of the Claimant) one or more sworn statements by individuals having personal knowledge of the relevant facts that bear upon the validity, principal amount or maturity date of the Unreconciled Claim (as the case may be).

The Claimant shall also include in its written submissions, if available, the originals (or certified copies) of the instruments evidencing the Unreconciled Claim. If such original or certified copies are not available, the Claimant shall include the best evidence the Claimant possesses concerning the Unreconciled Claim.

Iraq may, but shall not be obligated to, submit a written submission of the kind referred to in the prior two paragraphs.

One copy of each written submission shall be delivered to the Arbitrator and to the other party.

Within 15 calendar days of the Submission Date, either party may submit a rebuttal to the written submission of the other party by delivering a copy of that rebuttal to the Arbitrator and to the other party. Thereafter, no further written submissions of any kind will be entertained unless specifically requested by the Arbitrator.

At the Arbitrator's sole discretion, the Arbitrator may request additional documentary evidence and one or more conference telephone calls among the parties to discuss issues related to the arbitration or any questions that the Arbitrator may have arising from the written submissions or rebuttals. Both parties shall be entitled to have legal counsel participate in any such calls.

No party shall have any right of documentary discovery, or any right to depose or cross-examine witnesses, in respect of the other party.

Neither party may communicate with the Arbitrator verbally unless they have given notice to the other party of that intended communication and the other party has been furnished an opportunity to participate in the communication.

Any document or writing sent by either party to the Arbitrator shall be simultaneously copied to the other party.

<u>Awards</u>

Approximately 45 calendar days following the Submission Date, the Arbitrator shall send his/her written award to the parties, with a copy to the Chairperson and the Reconciliation Agent (each an "<u>Award</u>"), covering each Unreconciled Claim for which arbitration was requested, the final value of which shall be calculated by the Reconciliation Agent in accordance with the Reconciliation Methodology, as described below. The Award shall state, for each such Unreconciled Claim, whether the Claim is recognized as valid and, if so, the total principal amount and maturity date of that Unreconciled Claim.

<u>Standard for Rendering Awards</u>

An Arbitrator, acting in his or her sole discretion, shall recognize as valid an Unreconciled Claim submitted for arbitration, or shall determine the principal amount or maturity date thereof (as the case may be), if the Arbitrator finds that the existence, principal amount or maturity date, as the case may be, of that Unreconciled Claim has been, to the reasonable satisfaction of the Arbitrator, corroborated by credible documentary evidence, which may include historical documentary evidence (such as financial statements, annual reports, or copies of prior billings sent to an Iraqi counterparty) of the existence, principal amount or maturity date of the Unreconciled Claim, as the case may be. Under these circumstances, the Arbitrator shall render an Award in respect of that Unreconciled Claim in favor of the Claimant, even if Iraq presents no written submission in the arbitration.

If the Arbitrator fails to find such credible documentary evidence, it shall render the Award for that Unreconciled Claim in favor of Iraq.

If the Award is rendered in favor of the Claimant, the Reconciliation Agent shall proceed to calculate contractual and late interest thereon in accordance with the Reconciliation Methodology referred to in Section 3 of the Invitation. The aggregate amount of the claim (principal plus calculated interest) shall then be purchased by Iraq and simultaneously cancelled on the Arbitrated Claims Closing Date, on the terms set out in the Invitation.

A-4

The Arbitrator shall not be required to give a statement of the rationale or reasons for the Award.

**All Awards shall be final, non-appealable and binding on both parties. Neither party shall have any recourse to appeal an Award to any court or tribunal.**

<u>Indemnity and Release</u>

The Claimant (by submitting one or more Unreconciled Claims for arbitration under these Arbitration Procedures) and Iraq each irrevocably agrees to indemnify, release and hold harmless the Chairperson and each member of the Panel from any loss, claim or liability arising from these Arbitration Procedures or from the conduct of, or the Award in, an Arbitration.

<u>Notices</u>

Any Notice of Arbitration, written submission, rebuttal or Award or other document delivered in accordance with these Arbitration Procedures shall be sent by registered mail or receipted courier, in each case to arrive, to the extent possible, with the intended recipient no later than the second day following dispatch.

<u>Governing Law</u>

These Arbitration Procedures, and each Arbitration conducted hereunder, shall be subject to the law of the State of New York.

## SUMMARY TIME SCHEDULE OF ARBITRATION PROCEDURES[*]

| Event | Date |
|---|---|
| Submission of Notice of Arbitration – Tender Due Date ........................................................ | March 13, 2006 |
| Assignment of Claims to Arbitrator by Chairperson .............................................. | March 14, 2006 through March 21, 2006 |
| Notification by Arbitrator of Deadline for Written Submissions ................................................ | Not later than 15 calendar days from Assignment of Arbitration to Arbitrator |
| Submission Date ................................................ | Approximately 45 calendar days from Notification |
| Deadline for Rebuttal Submissions................................... | Not later than 15 calendar days from Submission Date |
| Arbitral Awards Rendered ................................................ | Approximately 45 calendar days from Submission Date |
| Arbitrated Claims Closing Date........................................ | Not later than July 15, 2006 |

---

[*] These dates may be altered by Iraq in its sole discretion.  Any changes to this schedule shall be posted on the Website.

A-6

# FORM OF TENDER

**[Please complete by typing in the missing information and return this form together with its attachments, including your Statement of Reconciled Eligible Claims, to the Settlement Agent at the fax number shown below.]**

To:          Settlement Agent, Agency and Trust – Mail Drop cgc-21-54
             Citibank N.A. Agency and Trust
             21st Floor
             Citigroup Centre
             33 Canada Square
             London
             E14 5LB
             United Kingdom
             Tel: +44 20 7508 3867
             Fax: +44 20 7508 3866
             Email: exchange.gats@citigroup.com

From:        _____
             (the "<u>Holder</u>")

Date:        _____

Re:          Iraq Invitation to Tender Claims for Cash Purchase and Cancellation
             dated February 9, 2006 (the "<u>Invitation</u>")

        We refer to the Invitation.  Capitalized terms used herein have the meanings given to those terms in the Invitation.

        The above-named Holder is the holder of the Reconciled Eligible Claims specified in the schedule attached hereto (bearing the Holder Reference Number: _____) and hereby offers each such Reconciled Eligible Claim for purchase by Iraq and simultaneous cancellation on the terms, and subject to the conditions, set out in the Invitation.  This Tender is irrevocable.

        The Holder is the holder of the Unreconciled Claims specified in the Schedule II attached hereto and hereby irrevocably agrees that if the Chairperson for the Arbitration Mechanism does not receive a written notice from the Holder specifying its election with respect to each Unreconciled Claim pursuant to the Arbitration Procedures set out in Exhibit A to the Invitation by the Tender Due Date, any Unreconciled Claim not covered by such an election will be cancelled effective on the Closing Date, and the Holder irrevocably agrees that such claim will be treated as an Unasserted Claim covered by the discharge and release set out in Section 14 of the Invitation.

By submitting this Tender, the Holder represents and warrants to Iraq, the Global Coordinators, the Reconciliation Agent and the Settlement Agent, as of the date of this Tender and the Closing Date, as follows:

(i)    it is the record holder of the Reconciled Eligible Claims identified in Schedule I to the Invitation (or would be the record holder had all required consents to the assignment of the Reconciled Eligible Claims to the Holder been obtained) and has all legal right, title and authority to sell such claims free from all liens, encumbrances or rights of third parties therein and to give a full and complete discharge and release of all amounts relating to such Reconciled Eligible Claims;

(ii)    it has the power and authority to submit this Tender and to receive the Purchase Price as the full consideration for the sale and cancellation of all amounts relating to the Reconciled Eligible Claims covered by this Tender;

(iii)    in submitting this Tender it will not, to the best of its knowledge, contravene any applicable law, regulation or contractual restriction or any order by any tribunal of competent jurisdiction;

(iv)    it has taken all necessary action to authorize the execution and delivery of this Tender, and the performance of its obligations under this Tender and the Invitation;

(v)    this Tender, if accepted by Iraq in the manner described in Section 6 of the Invitation, constitutes the Holder's valid and binding obligation, enforceable against the Holder in accordance with the terms of this Tender and the Invitation;

(vi)    any governmental authorizations or approvals of any kind required for the validity or enforceability against the Holder of its obligations under this Tender and the Invitation have been obtained or performed and are valid and subsisting in full force and effect;

(vii)    on the Closing Date, the Reconciled Eligible Claims covered by this Tender will be sold to Iraq and cancelled free from all liens, encumbrances or rights of third parties therein;

(viii)    the claims that are tendered hereby meet the criteria for eligibility set forth in the RFI;

(ix)    it holds no claims meeting the eligibility criteria of the RFI that were not identified in its response to the RFI (including any supplement thereto);

(x)    the statements set forth in the Holder's response to the RFI, as amended or supplemented, were true and accurate as of the date of such response or supplement;

(xi)     other than as previously disclosed to the Reconciliation Agent, neither the Holder nor, to the Holder's knowledge, any predecessor in title has exercised any set-off or other debit against the value of any Reconciled Eligible Claims;

(xii)     other than as previously disclosed to the Reconciliation Agent, the Holder does not hold any balances or other accounts for the benefit of (whether subject to a banker's lien or any other security interest) any Specified Obligor;

(xiii)   it has not been charged with or convicted of terrorism or money laundering nor charged with or convicted of any crime with respect to the Reconciled Eligible Claims by any tribunal of competent jurisdiction; and

(xiv)   none of the Reconciled Eligible Claims identified in Schedule I were eligible for consideration by the UNCC established pursuant to United Nations Security Council Resolution No. 692, dated as of May 20, 1991.

If any Reconciled Eligible Claims or Unreconciled Claims are covered by or merged into a Judgment (other than a UNCC award) or are the subject of any Pending Litigation in any jurisdiction (which should previously have been indicated in the Holder's response to the RFI and, where known to the Reconciliation Agent, is noted in the attached Statement of Reconciled Eligible Claims), the Holder has delivered to the Settlement Agent the documentation required by Section 13 of the Invitation.

If any Reconciled Eligible Claims are evidenced by a negotiable instrument (which should previously have been indicated in the Holder's response to the RFI and, where known to the Reconciliation Agent, is noted in the attached Statement of Reconciled Eligible Claims), those negotiable instruments have been delivered to the Settlement Agent, or the indemnity set forth in Section 9 of the Invitation is given.

Regards,


By:

_____
Name:
Title:
Name of Institution:

Attachments:  Holder's Administrative Information
              Statement of Reconciled Eligible Claims

Holder Reference Number: _____

## ATTACHMENT TO TENDER

HOLDER'S ADMINISTRATIVE INFORMATION

| HOLDER'S NAME: | |
|---|---|
| | |
| STREET ADDRESS: | |
| | |
| CONTACT PARTY: | |
| | |
| PHONE: | |
| | |
| FACSIMILE NUMBER: | |
| | |
| ELECTRONIC MAIL ADDRESS: | |

SYNDICATE AGENT'S ADMINISTRATIVE INFORMATION (IF APPLICABLE)

| SYNDICATE AGENT'S NAME: | |
|---|---|
| | |
| STREET ADDRESS: | |
| | |
| CONTACT PARTY: | |
| | |
| PHONE: | |
| | |
| FACSIMILE NUMBER: | |
| | |
| ELECTRONIC MAIL ADDRESS: | |

Holder Reference Number: _____

PAYMENT INSTRUCTIONS

| CURRENCY: | U.S. DOLLARS |
|---|---|
| BANK NAME: | |
| ABA/FEDWIRE OR SWIFT (OR USD CORRESPONDENT BANK DETAILS, INCLUDING SWIFT, IF APPLICABLE): | |
| ACCOUNT NAME: | |
| ACCOUNT NUMBER: | |
| REFERENCE: | PROJECT 688 |

| CURRENCY: | EURO |
|---|---|
| BANK NAME: | |
| SWIFT OR SORT CODE (OR EURO CORRESPONDENT BANK, INCLUDING SWIFT, IF APPLICABLE): | |
| ACCOUNT NAME: | |
| ACCOUNT NUMBER: | |
| REFERENCE: | PROJECT 688 |

| CURRENCY: | JAPANESE YEN |
|---|---|
| BANK NAME: | |
| SWIFT (OR JPY CORRESPONDENT BANK, INCLUDING SWIFT, IF APPLICABLE): | |
| ACCOUNT NAME: | |
| ACCOUNT NUMBER: | |
| REFERENCE: | PROJECT 688 |

EXHIBIT C

## FORM OF ACCEPTANCE OF TENDER

To:            [Holder]

Attn:          [Name]

From:          Citibank, N.A.

Date:          _____

Re:            Iraq Debt Purchase Tender

        We refer to your Tender (the "<u>Tender</u>") dated _____ in response to the Republic of Iraq's ("<u>Iraq</u>") Invitation to Tender Claims for Cash Purchase and Cancellation dated February 9, 2006 (the "<u>Invitation</u>").

        At the instruction of Iraq, we are writing to confirm Iraq's acceptance of the Tender on the terms and subject to the conditions of the Invitation.

        Accordingly, Iraq has instructed us to inform you that the Reconciled Eligible Claims listed in the schedule to the Tender (Holder Reference Number_____) will be purchased by Iraq and cancelled on or about March 30, 2006 (the "<u>Closing Date</u>") at the Purchase Price calculated in the manner provided in Section 5 of the Invitation.

                Regards,


                By:  Citibank, N.A.,_____
                        as Settlement Agent


                Name:_____

# Exhibit B

24/3/06 · ④

## TENDER

To:     Settlement Agent, Agency and Trust – Mail Drop cgc-21-54
        Citibank N.A. Agency and Trust
        21ˢᵗ Floor
        Citigroup Centre
        33 Canada Square
        London
        E14 5LB
        United Kingdom
        Tel: +44 20 7508 3867
        Fax: +44 20 7508 3866
        Email: exchange.gats@citigroup.com

From:   Agrocomplect, EAD
        (the "Holder")

Date:   03/09/06

Re:     Iraq Invitation to Tender Claims for Cash Purchase and Cancellation
        dated February 9, 2006 (the "Invitation")

        We refer to the Invitation. Capitalized terms used herein have the meanings given to those terms in the Invitation.

        The above-named Holder is the holder of the Reconciled Eligible Claims specified in the schedule attached hereto (bearing the Holder Reference Number: - CR 006097        ) and hereby offers each such Reconciled Eligible Claim for purchase by Iraq and simultaneous cancellation on the terms, and subject to the conditions, set out in the Invitation. This Tender is irrevocable.

        The Holder is the holder of the Unreconciled Claims specified in the Schedule II attached hereto and hereby irrevocably agrees that if the Chairperson for the Arbitration Mechanism does not receive a written notice from the Holder specifying its election with respect to each Unreconciled Claim pursuant to the Arbitration Procedures set out in Exhibit A to the Invitation by the Tender Due Date, any Unreconciled Claim not covered by such an election will be cancelled effective on the Closing Date, and the Holder irrevocably agrees that such claim will be treated as an Unasserted Claim covered by the discharge and release set out in Section 14 of the Invitation.

        By submitting this Tender, the Holder represents and warrants to Iraq, the Global Coordinators, the Reconciliation Agent and the Settlement Agent, as of the date of this Tender and the Closing Date, as follows:

Holder Reference Number: CR  006097

    (i)    it is the record holder of the Reconciled Eligible Claims identified in Schedule I to the Invitation (or would be the record holder had all required consents to the assignment of the Reconciled Eligible Claims to the Holder been obtained) and has all legal right, title and authority to sell such claims free from all liens, encumbrances or rights of third parties therein and to give a full and complete discharge and release of all amounts relating to such Reconciled Eligible Claims;

    (ii)    it has the power and authority to submit this Tender and to receive the Purchase Price as the full consideration for the sale and cancellation of all amounts relating to the Reconciled Eligible Claims covered by this Tender;

    (iii)    in submitting this Tender it will not, to the best of its knowledge, contravene any applicable law, regulation or contractual restriction or any order by any tribunal of competent jurisdiction;

    (iv)    it has taken all necessary action to authorize the execution and delivery of this Tender, and the performance of its obligations under this Tender and the Invitation;

    (v)    this Tender, if accepted by Iraq in the manner described in Section 6 of the Invitation, constitutes the Holder's valid and binding obligation, enforceable against the Holder in accordance with the terms of this Tender and the Invitation;

    (vi)    any governmental authorizations or approvals of any kind required for the validity or enforceability against the Holder of its obligations under this Tender and the Invitation have been obtained or performed and are valid and subsisting in full force and effect;

    (vii)    on the Closing Date, the Reconciled Eligible Claims covered by this Tender will be sold to Iraq and cancelled free from all liens, encumbrances or rights of third parties therein;

    (viii)    the claims that are tendered hereby meet the criteria for eligibility set forth in the RFI;

    (ix)    it holds no claims meeting the eligibility criteria of the RFI that were not identified in its response to the RFI (including any supplement thereto);

    (x)    the statements set forth in the Holder's response to the RFI, as amended or supplemented, were true and accurate as of the date of such response or supplement;

    (xi)    other than as previously disclosed to the Reconciliation Agent, neither the Holder nor, to the Holder's knowledge, any predecessor in title has exercised any set-off or other debit against the value of any Reconciled Eligible Claims;

2

Holder Reference Number: CR 006097

(xii)    other than as previously disclosed to the Reconciliation Agent, the Holder does not hold any balances or other accounts for the benefit of (whether subject to a banker's lien or any other security interest) any Specified Obligor;

(xiii)    it has not been charged with or convicted of terrorism or money laundering nor charged with or convicted of any crime with respect to the Reconciled Eligible Claims by any tribunal of competent jurisdiction; and

(xiv)    none of the Reconciled Eligible Claims identified in Schedule I were eligible for consideration by the UNCC established pursuant to United Nations Security Council Resolution No. 692, dated as of May 20, 1991.

If any Reconciled Eligible Claims or Unreconciled Claims are covered by or merged into a Judgment (other than a UNCC award) or are the subject of any Pending Litigation in any jurisdiction (which should previously have been indicated in the Holder's response to the RFI and, where known to the Reconciliation Agent, is noted in the attached Statement of Reconciled Eligible Claims), the Holder has delivered to the Settlement Agent the documentation required by Section 13 of the Invitation.

If any Reconciled Eligible Claims are evidenced by a negotiable instrument (which should previously have been indicated in the Holder's response to the RFI and, where known to the Reconciliation Agent, is noted in the attached Statement of Reconciled Eligible Claims), those negotiable instruments have been delivered to the Settlement Agent, or the indemnity set forth in Section 9 of the Invitation is given.

Regards,

By:

Name: Sylvia J. Rolinski, Esq.
Title: Attorney

Name of Institution: Agrocomplect, EAD

Attachments:   Holder's Administrative Information
               Statement of Reconciled Eligible Claims

3

Holder Reference Number: CR 006097

**ATTACHMENT TO TENDER**

HOLDER'S ADMINISTRATIVE INFORMATION

| HOLDER'S NAME: | Agrocomplect, EAD |
|---|---|
| STREET ADDRESS: | 61 Vitoshe Blvd. |
| | Sofia, Bulgaria 1000 |
| CONTACT PARTY: | Sylvia J. Rolinski, Esq. |
| PHONE: | 1-(240) 632-0903 |
| FACSIMILE NUMBER: | 1-(240) 632-0906 |
| ELECTRONIC MAIL ADDRESS: | SRolinski@Rolinski.com |

SYNDICATE AGENT'S ADMINISTRATIVE INFORMATION (IF APPLICABLE)

| SYNDICATE AGENT'S NAME: | |
|---|---|
| STREET ADDRESS: | |
| CONTACT PARTY: | |
| PHONE: | |
| FACSIMILE NUMBER: | |
| ELECTRONIC MAIL ADDRESS: | |

4

Holder Reference Number: CR 006097

PAYMENT INSTRUCTIONS

| CURRENCY: | U.S. DOLLARS |
|---|---|
| BANK NAME: | Citibank |
| ABA/FEDWIRE OR SWIFT (OR USD CORRESPONDENT BANK DETAILS, INCLUDING SWIFT, IF APPLICABLE): | ABA# 254070116 |
| ACCOUNT NAME: | Rolinski & Suarez, LLC Trust Account |
| ACCOUNT NUMBER: | 24002545 |
| REFERENCE: | PROJECT 688 |

| CURRENCY: | EURO |
|---|---|
| BANK NAME: | |
| SWIFT OR SORT CODE (OR EURO CORRESPONDENT BANK, INCLUDING SWIFT, IF APPLICABLE): | |
| ACCOUNT NAME: | |
| ACCOUNT NUMBER: | |
| REFERENCE: | PROJECT 688 |

| CURRENCY: | JAPANESE YEN |
|---|---|
| BANK NAME: | |
| SWIFT (OR JPY CORRESPONDENT BANK, INCLUDING SWIFT, IF APPLICABLE): | |
| ACCOUNT NAME: | |
| ACCOUNT NUMBER: | |
| REFERENCE: | PROJECT 688 |

5

EY Iraq Debt Reconciliation Office

| Date of this Reconciliation Statement: | 22-Feb-2006 | Tender Due Date : | 13-Mar-2006 |
|---|---|---|---|
| Date Interest Calculated To: | 30-Mar-2006 | Closing Date : | 30-Mar-2006 |

## *Schedule I: Statement of Reconciled Eligible Claims*

**Name of Holder: AGROCOMPLECT, EAD**

**Holder Address: 14915 River Road, Potomac, Maryland 20854, USA**

**Holder Reference Number: CR006097**         **Holder Contact Person: Attorney Sylvia J. Rolinski, Esquire**

**Holder Telephone: +1 240 632 0903**          **Holder Fax: +1 240 632 0906**

| Our Reference | Your Booking Ref | Caption of, or description of, instrument relating to Reconciled Eligible Claim | Specified Obligor | Original Currency | Principal In Original Currency | Standard Currency | Reconciled Outstanding Principal Amount in Standard Currency | Calculated Amount of Interest in Standard Currency | Total Reconciled Principal and Interest in Standard Currency |
|---|---|---|---|---|---|---|---|---|---|

The Reconciliation Agent was unable to reconcile any of the claims registered by the Holder.

EY Iraq Debt Reconciliation Office

Date of this Statement of Unreconciled Claim    22-Feb-2006

## *Schedule II: Statement of Unreconciled Claims*

Name of Holder: AGROCOMPLECT, EAD

Holder Address: 14915 River Road,Potomac,Maryland 20854,USA

Holder Reference Number: CR006097              Holder Contact Person: Attorney Sylvia J. Rolinski, Esquire

Holder Telephone: +1 240 632 0903             Holder Fax: +1 240 632 0906

| | Our Reference | Your Booking Ref | Caption of, or description of, Instrument relating to Unreconciled Claim | Specified Obligor | Currency | Amount of Principal claimed by Holder | The Reconciliation Agent is unable to confirm: |
|---|---|---|---|---|---|---|---|
| 1 | 57890 | CONTRACT NO. 65 | Other Debt :CONTRACT NO. 65 | RAFIDAIN BANK | USD | 7,505,203.20 | Existence |

EY Iraq Debt Reconciliation Office

Date of this Statement of Unreconciled Claims   09-Feb-2006

## *Schedule II: Statement of Unreconciled Claims*

**Name of Holder: AGROCOMPLECT, EAD**

**Holder Address: 14915 River Road,Potomac,Maryland 20854,USA**

**Holder Reference Number: CR006097**          **Holder Contact Person: Attorney Sylvia J. Rolinski, Esquire**

**Holder Telephone: +1 240 632 0903**          **Holder Fax: +1 240 632 0906**

| Our Reference | Your Booking Ref | Caption of, or description of, instrument relating to Unreconciled Claim | Specified Obligor | Currency | Amount of Principal claimed by Holder | The Reconciliation Agent is unable to confirm: |
|---|---|---|---|---|---|---|
| 1 | 57890 | CONTRACT NO. 65 | Other Debt :CUNTRACT NO. 65 | RAFIDAIN BANK | USD | 6,592,433.65 | Existence |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

AGROCOMPLECT, AD,                           )
                                            )
                    Plaintiff,              )
                                            )        Case No. 1:07CV00165 (RBW)
        v.                                  )
                                            )
**THE REPUBLIC OF IRAQ**                    )
**Ministry of Finance**                     )
**Bab Al Moazam**                           )
**Near Mohammad Al Qasem Highway**          )
**Baghdad**                                 )
**Iraq**                                    )
                                            )
                    Defendant.              )
                                            )
_____)

**PROPOSED ORDER GRANTING MOTION TO DISMISS THE COMPLAINT**

    Upon consideration of the Defendant's Motion to Dismiss the Complaint; the

opposition thereto; any reply; the accompanying exhibits; and for good cause shown, it is, on this

_____ day of _____, 2007, hereby:

    ORDERED that the Defendant's motion is granted; and it is hereby

    FURTHER ORDERED that the Complaint is dismissed.

            _____
            Reggie B. Walton
            United States District Judge

## <u>List of Persons to be Notified (LCvR 7(k))</u>

Matthew D. Slater
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
mslater@cgsh.com

Jonathan I. Blackman
Lisa M. Coyle
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
jblackman@cgsh.com
lcoyle@cgsh.com
Attorneys for Defendant The Republic of Iraq

Sylvia J. Rolinski
Danielle M. Espinet
Rolinski & Suarez, LLC
14915 River Road
Potomac, Maryland 20854
srolinski@rolinski.com
Attorney for Agrocomplect, AD

Philip M. Musolino
Musolino & Dessel
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
pmusolino@musolinoanddessel.com
Attorney for Agrocomplect, AD