UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGROCOMPLECT, AD         :
                         :
        Plaintiff,       :
                         :
                         :
                         :
v.                       :   Case No. 1:07-cv-00165 (RBW)
                         :
THE REPUBLIC OF IRAQ     :
                         :
        Defendant        :


**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant the Republic of Iraq ( hereinafter "Defendant") urges the court to reject the request of Plaintiff Agrocomplect AD ("Plaintiff") for limited discovery on one component of the "direct effect" requirement of the Foreign Sovereign Immunities Act ("FSIA") [1] and on two affirmative defenses raised by Defendant [2] because, Defendant contends: "Agrocomplect has not alleged *any* specific facts, that, if true, would establish jurisdiction over the Republic (emphasis in original), " Def. Opp., at 4-6; direct effect discovery can be obtained "through alternate means," *id*, at 6-7; disposition of the affirmative defenses should be deferred until after disposition of the jurisdictional

---

[1] As Defendant notes, Plaintiff seeks "direct effect" discovery only with respect to the provisions for payment in the United States. Defendant's Opposition to Plaintiff's Motion for Leave to Limited Discovery on Motion to Dismiss First Amended Complaint, Docket # 25, ( "Def.Opp."), at 3, n.4.

[2] Defendant asserts the affirmative defenses of the statute of limitations, Defendant's Motion to Dismiss the First Amended Complaint, Docket # 19, ("Motion to Dismiss"), at 24-26 and release, *id.*, at 26-29.

defenses, *id.*, at 8; [3] and should be decided in arbitration, *id.*, at 9; [4] and, no conversion from rule 12 to rule 56 was triggered by Defendant's Motion to Dismiss. *Id.*, at 10.

For the reasons set forth in Plaintiff's Motion for Leave to Limited Discovery on Motion to Dismiss First Amended Complaint, Docket # 23, ("Pl. Discovery Motion"), and as set forth below, Defendant's arguments should be rejected and plaintiff should be permitted to conduct limited discovery.

## I. DIRECT EFFECT DISCOVERY ON PAYMENTS IN THE UNITED STATES [5]

### A. Plaintiff Has Produced Sufficient Evidence of Payment Due In the United States

Defendant does not and cannot dispute that the District of Columbia Circuit, in *I.T. Consultants Inc. v. The Islamic Republic of Pakistan*, 351 F.3d 1184 (D.C. Cir. 2003). discussing its earlier decision in *Goodman Holdings v. Rafidain Bank* 26 F.3d 1143 (D.C.Cir. 1994), ruled that:

> a foreign sovereign's failure to make a contractually required deposit [6] in a bank in the United States meets the statute's definition of a "direct effect," without regard to whether the parties considered the place of payment "important," "critical," or "integral."

---

[3] The Supreme Court has recently clarified the leeway accorded to a trial court in its sequencing of non-merits motions to deny consideration of a complaint. In *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1186-87, 167 L.Ed. 2d 15 (2007), the Supreme Court ruled that:
> Although a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) and the parties (personal jurisdiction) ... there is no mandatory sequencing of nonmerits issues ... A court has leeway to choose among threshold grounds for denying audience to a case on the merits....

[4] Plaintiff raised the issue of the arbitrability of the affirmative defenses in its Opposition to the Motion to Dismiss, Docket #21, at 24-25. The trial court is required to determine "the basic question of whether the parties have agreed to arbitrate the dispute...." *Id.*, and cases cited therein. The motions and oppositions in this case have not squarely addressed that issue.

[5] Plaintiff addresses at length in its Opposition to the Motion to Dismiss, at 9-18, the content and the scope of the evidence now available on Defendant's agreement to make contract payments in New York, and the application of those facts to the direct effect test.

[6] In her concurrence in *Goodman Holdings*, Judge Wald stressed that: "I write separately to emphasize that, for an act to have a 'direct effect' in the United States, there is no prerequisite that that the United States be contractually designated as the place of performance." *Goodman Holdings*, at 1147 (Wald, concurring).

2

*I.T. Consultants* at 1186.

Conjunctively, Defendant does not and cannot dispute that the direct effect test is satisfied even if the effect is on a third party, rather than on the plaintiff. In *Commercial Bank of Kuwait v. Rafidain Bank and Central Bank of Iraq*, 15 F.3d 238 (2d Cir. 1994), plaintiff sued the two Iraqi banks because they suspended payments after the invasion of Kuwait. The defendants contended that the direct effect test was not satisfied because "the payments were to be made not directly to Commercial but to New York bank accounts held by the lead banks of the various lending syndicates." At 241. They thus claimed that "because the United States is not the place of performance of any contractual obligations owed to this plaintiff, there is no 'direct effect." *Id.*

The Second Circuit rejected that argument, and reiterated that the exception applies to "commercial activities of foreign sovereigns that have an impact within the United States." *Id. Commercial* thus establishes that the direct effect is not limited to effects on the plaintiff. And *see United World Trade Inc. v. Mangyshlakneft Oil Prod. Assoc.*, 33 F.3d 1232, 1236-38 (10th Cir.1994); *see also IDAS Resources, N.V. v. Empresa National de Diamantes de Angola E.P.*, 2006 WL 3060017*7 (D.D.C. 2006), and *see Maritime International Nominees Establishment v. The Republic of Guinea*, 693 F.2d 94, 1110, 1111 (D.C.Cir. 1983) (recognizing that injury to non-party could constitute direct effect.)

The direct effect is established, therefore, if a payment due under the Contract was to be made to Plaintiff or to Bulbank in New York.[7] The evidence assembled by

---

[7] Though it is not necessary to allege or prove that Contract monies paid to Bulbank were the property of Plaintiff in the same sense that monies in a bank account are the property of the bank customer, Plaintiff appends hereto the declaration of its President Iskren Conev Tconev, which makes clear that all Contract

3

Plaintiff to this date demonstrates that Iraq agreed to make the Contract payments through CBI to Bulbank in New York.

As paragraph 31 of the First Amended Complaint avers, "(a) document titled Memorandum No. 2, between the Bulgarian Foreign Trade Bank ("Bulbank") and the Central Bank of Iraq ("CBI") provided in part that:

> 1. *The Contract for the construction of "Hilla-Diwaniya 4" Land Reclamation Project* shall be covered by the provisions of Par.6, Item 1 of Law 157 of 1973 that grants privileges to major development projects in Iraq....
>
> 13. *The provisions pf the Iterbank Agreement between the Central Bank of Iraq and the Bulgarian Foreign Trade Bank, signed on March 22, ___, [8]in Sofia, Bulgaria, shall be valid for this Contract*, provided the Agreement is approved by the respective authorities of both _____....
>
> 15.  The Contractor shall have the right to transfer abroad 55% (fifty-five percent only) of the total Contract value, in free US Dollars, including payment for the personnel engaged in the Project's execution, in accordance with the minutes of the Extraordinary Session of the Iraqi-Bulgarian Joint Committee for Economic, Scientific and Technical Cooperation, signed on January 13, 1983, in Baghdad ....
>
> 21.  *This Memorandum shall be an integral part of the Contract for the construction of "Hillya-Diwaniya 4" Land Reclamation project* (emphasis added).

The Memorandum makes abundantly clear that the Bulbank/ CBI agreements were incorporated into and made an express part of the Contract in issue in this case, and that those payment commitments made by CBI to Bulbank "shall be valid for this Contract."

In the 1987 protocol of the Working Group on Trade and Financial Cooperation, Plaintiff's Exhibit ("PX") J-1 to Plaintiff's Motion for Leave to Conduct Limited Discovery, Docket # 15, "the representatives of the two countries...undertook to encourage their respective competent authorities to accelerate the signing of the relevant

---

monies paid to the Credit Lyonnais account in New York were exclusively the property of Plaintiff, and that neither Bulbank nor any other party had any claim to those monies.
[8] Portions of the Memorandum are cut off, and therefore not legible.

agreements," Document 15-4, pp. 1, 2, of 4, and in particular provided that "the Bulgarian Foreign Trade Bank and the Central Bank of Iraq shall enter into a relevant Bank Agreement." Document 15-4, p.4 of 4.

The Defendant thus directed the CBI, as its "competent authority," to enter into agreements for the payments due under the Contract. Those Bulbank/CBI agreements explicitly provided for payments in New York. First Amended Complaint, at ¶¶ 34, 36, PX L-1, PX L-2.

Defendant complains that "all but one of the Discovery Motion Exhibits are inapplicable to the Contract," Def. Opp., at 4, apparently because the documents to which Defendant refers do not explicitly refer to or incorporate the Contract in the same manner as the Memorandum. But the Memorandum itself establishes the link between the Contract and the chronology of banking arrangements culminating in New York payments. Defendant's companion complaint that no document referencing the Contract contains the New York payment terms, *id.*, fails for the same reason. The documents setting out the payment terms were contemplated by the Memorandum, which was incorporated into the Contract. That two or more documents must be read together to determine that payment under the Contract would be made in New York is simply not an impediment to a finding of direct effect. *See Nofziger Communications, Inc. v. Birks* 989 F.2d 1227, 1230 (D.C. Cir.1993) (declining to look at documents "in isolation").

When read together, the documents assembled so far by plaintiff lead to no conclusion other than that Iraq agreed that Contract payments would be made in New York. Defendant seeks to avoid the consequence of that conclusion by distinguishing between the Defendant and its own central bank. Def. Opp., at 5. But, as noted above,

the 1987 Working Group protocol, PX J-1, contains an explicit direction from Iraq to CBI to enter into the agreements providing for payment in New York.

Defendant does not dispute that CBI is a state-owned bank. Motion to Dismiss, at 15. "State-owned central banks indisputably are included in the FSIA's definition of 'agency or instrumentality.' " *Em Ltd. v. Republic of Argentina* 473 F.3d 463, 472 (2d Cir.,2007). Thus, both by virtue of Iraq's direction to and appointment of its CBI to make payments, and the well-recognized relationship between a state and its central bank, the record now before the court shows that CBI was Defendant's agent.

Defendant cannot escape the effect of its own instructions to CBI, and its designation of CBI as its agent for payment of Contract funds in New York, by looking to a "presumption of independent status," Def. Opp., at 6, as described in *First Nat. City Bank v. Banco Para El Comercio Exterior De Cuba* 462 U.S. 611, 103 S.Ct. 2591 1983).[9]

First, the independent status of CBI has no more effect on Defendant's liability than the independent status of an agent who fails to perform a contractual task assigned by the contracting principal. Unlike *First National*, Plaintiff here is not seeking to apply against the foreign state's instrumentality a setoff arising out of the foreign state's unrelated conduct. Rather, Plaintiff is simply attributing to Defendant's agent the conduct which Iraq appointed CBI to undertake in order to comply with the Contract.

Secondly, any presumption of independence, at least with respect to these transactions, is overcome by Iraq's appointment of CBI as the agent to perform its payment obligations.

---

[9] It is noteworthy that Defendant makes no effort to set out the elements of the actual relationship between it and CBI, either now or at the time of the agreements in issue. *See First National*, at 624-625(describing characteristics of agencies when they are designed to be separate juridical entities).

Thus, there is probative evidence that Defendant, through a series of Memoranda and agreements, agreed that payments due under the Contract would be made through CBI in New York. The record now before the court is sufficient to trigger limited discovery to enable the court to ferret out all of the facts relevant to a determination of its jurisdiction over the Defendant under the FSIA.

## B. There Are No "Alternative Means" Sufficient to Reject Limited Discovery

Defendant suggests that "plaintiff can just as easily obtain the information sought through means other than discovery…." Def. Opp., at 7. Defendant adds that Plaintiff presumably obtained the documents now before the court through Bulbank. *Id.* But that presumption is wrong. As Agrocomplect President Tconev declares, "the records of Bulbank have been burned in a fire." Tconev declaration, at ¶ 7.

While Defendant refers to "the current state of hostilities," Def. Opp., at 7, it does not claim that documents which would illuminate Iraq's payment commitments under the Contract, or its arrangement with CBI, or CBI's own actions, are unavailable to it. Certainly, the exchanges between Defendant and its own central bank are "peculiarly within" its knowledge.

Because alternate means of obtaining that evidence is not available to Plaintiff, and the evidence may well be within Defendant's easy reach, limited discovery directed at that evidence should be permitted.

## II. DISCOVERY ON AFFIRMATIVE DEFENSES [10]

Defendant, in its Motion to Dismiss, heavily relied on extraneous exhibits to support its affirmative defense of release, and less heavily on exhibits addressed to its statute of limitations claim.[11]

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

See *Marshall County Health Care Authority v. Shalala* 988 F.2d 1221, 1226 (D.C. Cir. 1993). "...(T)he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d]' and 'mandatory.'" *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2nd Cir. 2006).

Conversion is not required where the trial court considers material which is "integral" to the complaint or "an appropriate subject for judicial notice." *Id*. Defendant's contention that its exhibits fall within that exception to the conversion requirement is, however, incorrect. As the court in *Global Network Communications, Inc., supra,* made clear: "...(W)ith respect to whether the materials considered were integral to Global's complaint, a necessary prerequisite for that exception is that the 'plaintiff *rely* on the terms and effect of the document in drafting the complaint;" mere notice or possession is not enough (internal brackets and ellipses omitted, emphasis in original)." At 156. The

---

[10] Defendant insists that its affirmative defenses should be directed to arbitration, Def.Opp., at 9, but, it has not withdrawn those defenses as grounds for dismissal. So long as Defendant relies, even in the alternative, on those grounds, Plaintiff is entitled to limited discovery.

[11] Plaintiff addresses the procedural effect, including discovery, of the Defendant's reliance on extraneous material in Plaintiff's Opposition to the Motion to Dismiss, at 7-10.

*Global* court rejected the contention that the complaint's reference to guilty pleas opened the door to the content of the testimony proffered in exchange for the pleas. At 156.

Emphasizing that the complaint neither "mentioned nor relied upon" the testimony, and citing with approval a prior decision requiring that the complaint "relies *heavily* upon its terms and effect (emphasis in original),"*id.*, the court noted that "(i)n most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls...." At 157. There is no reference in the First Amended Complaint to any of Defendant's proffered exhibits, nor is any of those exhibits relied upon in the First Amended Complaint.

In the event that the court determines that it will consider the exhibits appended to Defendant's motion, the court must provide Plaintiff with notice and an opportunity to conduct discovery on the issues raised by the exhibits. "When a district court converts a Rule 12(b)(6) motion to one for summary judgment, it must allow all parties both a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56' and a chance 'to pursue reasonable discovery.'" *Taylor v F.D.I.C.*, 132 F.3d 753, 765 (D.C. Cir. 1997).

Respectfully submitted,

/s/ Philip M. Musolino
Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*: (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

/s/ SJR
Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*: (240) 632-0906
*Email*: srolinski@rolinski.com

## CERTIFICATE OF SERVICE

I certify that a true copy of this motion was served by electronic mail on October 8, 2007 to the following:

Matthew D. Slater, Esq.
*Cleary Gottlieb Steen & Hamilton, LLP*
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006

Jonathan I. Blackman, Esq.
Lisa M. Coyle, Esq.
*Cleary, Gottlieb, Steen & Hamilton, LLP*
One Liberty Plaza
New York, NY 10006

                                                   Philip M. Musolino

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGROCOMPLECT, AD

      Plaintiff,

vs.

THE REPUBLIC OF IRAQ
      Defendant.

Case No. 1:07-cv-00165
The Hon. Reggie B. Walton

### DECLARATION OF ISKREN CONEV TCONEV

I, ISKREN TSONEV TSONEV, Personal ID 6908156246, do hereby declare, swear and affirm under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746, that the following is true, correct and accurate on the basis of my personal knowledge:

1. I am the president of Agrocomplect, AD ("Agrocomplect"), and I am authorized to make this declaration, and this declaration is based on my personal knowledge.

2. I am familiar with the claims in this case.

3. I am familiar with the relationship between "Bulbank" and Agrocomplect.

4. I am familiar with contract (the "Contract") for the provision of engineering and construction services to be performed by Agrocomplect on the Hilla-Diwaniya 4 Land Reclamation Project for the State Organization for Land Reclamation, operating under the authority of Iraq's Ministry of Agriculture and Irrigation of the Republic of Iraq.

5. I am familiar with the role that Bulbank played with respect to payment for that Contract.

6. I am familiar with the "Discovery Motion Exhibits."

7. Agrocomplect has not located all of the documents which appear to relate to payment under the Contract through Bulbank, and through accounts in Bulbank. Documents currently in Bulbank's possession, if any with respect to the Discovery Motion Documents, are not easily available to Agrocomplect or its counsel, because as I know the records of Bulbank had been burned in a fire.

8. However, the payments to be made to the Bulbank account in New York were exclusively payments due to Agrocomplect. Neither Bulbank nor any other entity other than Agrocomplect claimed, or was entitled to claim, any of the payments to be made into the New York account described in the Discovery Motion Exhibits.

9. Bulbank served under those arrangements as Agrocomplect's bank for purposes of receipt of the Contract payments. The payments to be deposited into the New York account would have become the immediate property of Agrocomplect, in the same manner as any deposit into an account of any bank customer.

10. Bulbank had no right to disburse Contract payments anywhere other than into Agrocomplect's account, and Agrocomplect was entitled to complete control over the funds in that account.

October 8, 2007

_____
ISKREN TSONEV TSONEV