UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGROCOMPLECT, AD : | |
| : | |
| Plaintiff, : | Case No. 1:07-cv-00165 (RBW) |
| : | |
| vs. : | |
| : | |
| THE REPUBLIC OF IRAQ : | |
| Defendant. : | |

## PLAINTIFFS' MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND ORDER AND JUDGMENT

COMES NOW Plaintiff Agrocomplect, AD (hereinafter "Plaintiff" or "Agrocomplect"), by and through undersigned counsel, and, pursuant to Fed.R.Civ. P. 59(e) moves this Honorable Court for reconsideration and to alter or amend its decision, order and judgment entered November 14, 2007, granting the motion of Defendant Republic of Iraq ("Iraq") to dismiss the case for lack of subject matter jurisdiction, and, in support therefore, respectfully refers this Honorable Court to the annexed memorandum of points and authorities.

WHEREFORE, by all these presents, counsel for Plaintiff prays that the instant motion be granted.

## CERTIFICATE OF COUNSEL

I, Philip M. Musolino, certify that I sought consent to the instant motion on December 14, 2007. Counsel for Defendant advised undersigned that Defendant will oppose the motion.

Respectfully submitted,

/s/Philip M. Musolino
Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*: (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com


/s/ Danielle M. Espinet
Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*: (240) 632-0906
*Email*: srolinski@rolinski.com

Respectfully submitted,


/s/Philip M. Musolino
Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*: (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com


/s/ Danielle M. Espinet
Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*: (240) 632-0906
*Email*: srolinski@rolinski.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGROCOMPLECT, AD :
:
Plaintiff, : Case No. 1:07-cv-00165 (RBW)
:
:
vs. :
:
THE REPUBLIC OF IRAQ :
Defendant. :

## ORDER

This matter having come before this Court on Plaintiff's Motion for Reconsideration and to Alter or Amend Order and Judgment, and opposition thereto, it is, for good cause shown this _____ day of _____, 2007,

ORDERED, that the instant motion be and is hereby GRANTED

SO ORDERED.

_____
Reggie B. Walton, Judge
United States District Court for the
District of Columbia


Philip M. Musolino, Esq.
*Musolino & Dessel*
1615 L Street, NW, Suite 440
Washington, DC 20036

Sylvia Rolinski, Esq.
Danielle M. Espinet, Esq.
*Rolinski, Terenzio & Suarez, LLP*
14915 River Road
Potomac, Maryland 20854

Matthew D. Slater, Esq.
*Cleary Gottlieb Steen & Hamilton, LLP*
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006

Jonathan I. Blackman, Esq.
Lisa M. Coyle, Esq.
*Cleary, Gottlieb, Steen & Hamilton, LLP*
One Liberty Plaza
New York, NY 10006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGROCOMPLECT, AD        :
                        :
        Plaintiff,       :       Case No. 1:07-cv-00165 (RBW)
                        :
                        :
vs.                     :
                        :
THE REPUBLIC OF IRAQ    :
        Defendant.       :

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND ORDER AND JUDGMENT**

Plaintiff Agrocomplect, A.D. ("Agrocomplect" or "Plaintiff") seeks reconsideration of and an order altering or amending this Court's order and judgment entered November 30, 2007 granting the motion of Defendant Republic of Iraq ("Iraq" or "Defendant") to dismiss the case for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").

For the reasons set forth below,[1] the instant motion should be granted.

### I. Whether the "Direct Effect" Exception Was Satisfied By Provisions for Payment In New York

The Court analyzed in detail at pages 12 through 24 of its November 30, 2007, Memorandum Opinion "Mem. Op.." Plaintiff's assertion that, taken together, the Contract, (*see* Amended Complaint, "Compl.", ¶¶ 4-5, and *see* Exhibit A to the Defendant's Motion to Dismiss the First Amended Complaint, "Motion to Dismiss;") Memorandum No.2, (*see* discussion in Mem. Op. at 3-4;) and arrangements, including certain Banking Arrangements, between the Bulgarian Foreign Trade Bank, "Bulbank",

---

[1] Plaintiff does not waive, for purposes of any appeal, each of the arguments urged in plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint, filed August 23, 2007, .

the National Bank for the People's Republic of Bulgaria, "Bulgaria," and the Central Bank of Iraq, "CBI," (Mem. Op. at 3-4, 16-19,) satisfied the direct effect test of the FSIA.

The Court characterized the arrangement between Bulbank and CBI as a "financing arrangement ... whereby the Bulbank would finance the dollar portion of the contract price pursuant to certain 'deferred payment arrangements[2] agreed upon by the Defendant and Bulgaria." (Mem. Op. at 3.) Discussing in particular the Banking Arrangements, the Court further determined that:

> Read collectively, these documents indicate that any payments to be made in the Bulbank's Credit Lyonnaise account in New York City were owed to Bulgaria as the creditor of the defendant, not to the plaintiff. Bulgaria, in turn, agreed to 'cover'[3] the defendant's obligations to Bulgarian companies like the plaintiff's with respect to the United States dollar portion of the contract price.

(Mem. Op. at 19.)

There is no document in the record now before the Court which reflects any agreement between Plaintiff and Bulbank, nor is there any document in the record now before the Court which reflects any agreement between Defendant and CBI. The Court concluded, however, that "(t)he defendant remained liable to Bulgarian companies only with respect to the Iraqi component of the contract price ...." *Id.* But:

"A novation is generally defined as the discharge of a valid existing contract by the replacement of one debtor for another or the substitution of a new obligation in lieu of an already existing responsibility.... A novation of debtors is effectuated when a creditor

---

[2] As the Court observed, the "deferred payment arrangements" are not explicitly set out in any document provided by the parties. Memorandum Opinion, at 4, n.6.
[3] Banking Arrangement No. 1 provided that "(t)he credits which the Bulgarian party shall grant to the Iraqi party shall cover 100% value of the foreign exchange currency portion of the contracts...." Banking Arrangement No. 3 does not contain similar terminology.

2

agrees or intends to extinguish his claim against the original debtor in exchange for a promise by a third person to assume the existing obligation." *Bashir v. Moayedi*, 627 A.2d 997, 1000, fn 7 (D.C. 1993); *see also Hemisphere Nat'l. Bank v. District of Columbia,* 412 A.2d 31, 36 (D.C. 1980) (same).

A novation of debtors is effectuated when a creditor agrees or intends to extinguish his claim against the original debtor in exchange for a promise by a third person to assume the existing obligation. *Hemisphere Nat. Bank,* 412 A.2d at 36 . In order for a novation to occur there must be a mutual agreement between the three parties, the creditor, the original debtor and the third party, in which it is understood that the new party is a replacement for the original debtor. As a result of the new agreement, the original debtor is released from any further liability." *Id.* (citations omitted).

A "novation [or cancellation] is never presumed" and the "burden of proof [is] upon [the debtor] to establish by clear and satisfactory evidence that there existed on the part of all parties involved in the subject transaction the clear and definite intention to effect a novation." *Pallie v. Riggs Nat. Bank,* 697 A.2d 1239, 1242 (D.C.App. 1997), quoting *Gullette v. Federal Deposit Ins. Corp.,* 344 S.E.2d 920, 922 (Va. 1986).

There is no evidence that Plaintiff entered into a novation with Defendant. Indeed, on January 15, 2003, the Legal Affairs Department of the Iraqi Council of Ministers, with reference to "Compensation Claim of the Bulgarian company Agrocomplect with respect to the contract Hilla-Diwaniya," wrote to the Ministry of Irrigation as follows:

> Referring to your letter No.673 dated 15th January 2003, we would like to notify you of the decision to grant the request of the Bulgarian company Agrocomplect for compensations for incurred losses and damages caused

3

to its property after the completion of the final settlement under Contract No 65 for Hilla-Diwaniya."

*See* Exhibit A, annexed hereto[4]. Iraq's Legal Affairs Department, therefore, clearly recognized that Plaintiff had not extinguished its contract claims against Iraq in exchange for a promise by Bulbank to assume the existing obligation. Indeed, Iraq's award to Plaintiff of an IDRO claim, (Mem. Op. at 5,) is inconsistent with any such conclusion.

Plaintiff respectfully suggests that the Court's determination that the declaration of Iskren Tsonev could not be reconciled with the documents incorporated into the First Amended Complaint unless "plaintiff agreed to finance its own services using the entire Bulgarian government as its agent..." or unless "plaintiff separately agreed to defer its right to payment with respect to the United States dollar portion of its contract price until Bulgaria received its payment from the defendant," (Mem. Op. at 22,) overlooks a third and more plausible arrangement: one Bulgarian state agency undertook to assist another Bulgarian state agency in the collection of overdue debts. Nothing in that arrangement suggests a novation of any kind. At most –from Defendant's perspective – Plaintiff agreed to defer its right to collect payments directly from Defendant so long as CBI performed its obligations under the Banking Arrangements.

---

[4] On November 8, 2007, counsel for plaintiff forwarded to counsel for defendant a copy of that letter, and advised counsel for defendant that plaintiff was considering moving to supplement or amend the pending discovery motion. On October 23, 2007, in an effort to verify the correspondence and its relevance, undersigned had written to counsel for defendant as follows:

> Unrelated to the arbitration procedures themselves, I note correspondence in or about January 2003, denominated with reference numbers 245, 417, and 673. I don't have all of the letters, but they appear to be exchanges on the timing and the substance of the resolution of my client's claims. I'm considering supplementing the record with the correspondence I have, but would like to know if you have any or all of the referenced correspondence, or any related documentation. I'd certainly be happy to forward you what I have -- currently we're confirming translations.

4

> "(A) mere promise by a third party to assume the obligor's duty, not offered in substitution for that duty, does not result in a novation, and the new duty that the third party may owe to the obligee as an intended beneficiary is in addition to and not in substitution for the obligor's original duty.

Restatement (2d) Contracts § 280 (1981). Thus, the assumption of a payment obligation by a new party does not imply a novation. *See, e.g., Scarboro v. Universal C. I. T. Credit Corp.*, 364 F.2d 10, 14-15 (5th Cir. 1966). Even if Bulbank, in conjunction with CBI's Banking Arrangement obligations, could be construed to be a new obligor of plaintiff, the absence of any proof of a release of defendant's contractual obligations to plaintiff precludes any determination that plaintiff lacks standing to assert contractual claims against defendant.

Even if the Court could, at this stage, assume that Plaintiff had entered into some form of agreement deferring – but not surrendering – its right to enforce the Contract, the record now before the Court makes clear that such a conditional deferral has expired, because CBI did not meet its obligations under the Banking Arrangements. As Plaintiff alleged in paragraph 40 of the First Amended Complaint:

> On February 16, 2002, CBI wrote to Bulbank, in part, as follows:
>
> With reference to your Statements dated 1/1/2002 and 24/1/2002.
> We would like to inform you that due to the continued unjustified sanctions imposed on our country, which makes hindrances on our banking procedures, we inform you that the matter will be subject to reconsideration when the current situation cease to exist, and the sanctions imposed on Iraq are lifted taking into consideration that the figures of the principal debt and interest will not be considered as final figures unless all pending matters will be settled.

A copy of the letter is appended as PXN to Plaintiff's July 11, 2007, Motion for Limited Discovery, and is appended hereto as Exhibit B[5]. Undeniably, CBI conceded in that letter that "the continued unjustified sanctions" made it impossible for CBI to meet its obligations under the "Banking Arrangements signed between our two banks."

Therefore, even if Plaintiff deferred or conditioned its right to proceed against Defendant in the event that all payments were made through the Banking Arrangements, non-performance of the Banking Arrangements has lifted those restrictions. Without proof of novation, Plaintiff is entitled to the benefit of the New York payment obligations in the context of a direct effect, without surrendering its right to pursue Defendant directly.

Respectfully submitted,

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*:   (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

---

[5] The letter refers to "Statements of the Accounts opened under the Banking Arrangements signed between our two Banks."

/s/
_____
Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:    (240) 632-0906
*Email*: srolinski@rolinski.com



## Translation and Interpreting Agency

*Translation from Bulgaria*

COUNCIL OF MINISTERS
LEGAL AFFAIRS DEPARTMENT
Contracts
Our Ref. No 245
Date: 15th January 2003

*Stamp:* Irrigation and Land Reclamation Office,
Ref. No 417, 16th January 2003

To: Ministry of Irrigation
Re: Compensation Claim of the Bulgarian company **AGROCOMPLECT** with respect to the contract Hilla-Diwaniya

Referring to your letter No 673 dated 15th January 2003, we would like to notify you of the decision to grant the request of the Bulgarian company **AGROCOMPLECT** for compensations for incurred losses and damages caused to its property after the completion of the final settlement under Contract No 65 for Hilla – Diwaniya.

Best regards,
    Ali Mohammad Hassan, General Manager (Signed illegible)

*Cc:*
*- Ministry of Finance*
*- Ministry of Trade*
*- Control Commission – for information*
*- Internal Control – for information and execution*

*Follow legalizations by:*
*- Ministry of Foreign Affairs of the Republic of Iraq, Consular Office, Legalization Department*
*Certification No 3160, 18th January 2003,*
*Certification of the authenticity of the signature and the stamp of the Ministry of Finance without any responsibility for the contents of the document.*
*Signature: Signed illegible*
*Stamp of the Ministry of Foreign Affairs of the Republic of Iraq*

*- Notary Public, Registration No 6020, Signed illegible*
*True copy of the original – Certification No: 7652 / 22nd January 2003*
*Stamp of the Ministry of Justice, Notary Office*
*Signed illegible*



4, Hristo Georgiev Str., 1504 Sofia, Bulgaria
tel.: +(359 2) 946 13 92; tel./fax: +(359 2) 943 86 65
e-mail: fides@mail.techno-link.com



EXHIBIT
A

I, the undersigned Albena Atanassova Vassileva, hereby certify that this is a true and accurate translation done by me from Bulgarian into English of the attached document. The translated document comprises 2 pages.

Translator: Albena Atanassova Vassileva, Personal No 6808077550

2

# Агенция за преводи



*Превод от арабски език*

МИНИСТЕРСКИ СЪВЕТ
ПРАВЕН ОТДЕЛ
Договори
Изх. #: 245
Дата: 15.1.2003 г.

Правоъгълен печат: Главна дирекция "Иригационни и мелиоративни обекти"
вх. #: 417, 16.1.2003 г.

До: Министерството на иригациите
Относно: Молба на българската фирма АГРОКОМПЛЕКТ за получаване на компенсации по договора "Хилла - Дивания"

Във връзка с Ваше писмо # 673 от 15.1.2003 г. Ви уведомяваме, относно решението за уважаване законността на молбата на българската фирма АГРОКОМПЛЕКТ относно получаване на компенсация за нанесени щети и претърпени загуби на нейно имущество, след приключване на окончателната сметка по договор # 65 за "Хилла - Дивания".

С уважение:
    Али Мохамад Хасан - генерален директор (п)

*Копие до:*
- *Министерството на финансите*
- *Министерство на търговията*
- *Комисия по контрола - за сведение*
- *Вътрешен контрол - за сведение и изпълнение*

*Следват заверки на:*
- *Правоъгълен печат на Министерството на външните работи на Република Ирак - Консулска служба - отдел "Легализации", # на заверката: 3160, 18.1.2003 г., удостоверяващ верността на подписа и печата на Министерството на финансите, без да носи отговорност за съдържанието на документа, подпис не се чете.*
- *Нотариус - рег. #: 6020, подпис не се чете.*
*Вярно с оригинала - # на заверката: 7652/22.1.2003 г. и кръгъл печат на Министерството на правосъдието - Нотифиат - подпис не се чете.*

Подписаната Анна Петрова Димитрова удостоверявам верността на извършения от мен превод от арабски на български език на приложения документ (Писмо). Преводът се състои от 1 (една) страница. Преводач:
Анна П. Димитрова
ЕГН 5105056690

София 1504, ул."Хр. Георгиев" №4
тел.: 02/ 946 13 92; тел./факс: 02/943 86 65
e-mail: fides@mail.techno-link.com



مجلس الوزراء
دائرة الشؤون القانونية
المقاولات
العدد/ ٤٥٠
التاريخ/ ١٥/١/

إلى/ وزارة الري

م/ طلب الشركة اكروكومبلكت البلغارية بالتعويض عن المقاولة حلة ــ ديوانية

إشارة إلى كتابكم المرقم ٦٧٣ في ٢٠٠٢/١/١٥ فقد نعلمكم عن قرار موفقة على قانونية حق طلب الشركة اكروكومبلكت البلغارية الخاص بالتعويض عن الخسائر والاضرار التي لحقت بممتلكاتها وهذا بعد تصفية الحساب النهائي للمقاولة رقم ٦٥ / حلة ــ ديوانية

مع التقدير

علي محمد حسن
الأمين العام للمجلس

وزارة المالية
وزارة التجارة
لجنة المراقبة / للعلم
التدقيق الداخلي / للعلم والمتابعة

بنك المركزي العراقي

ENTRAL BANK OF IRAQ



Ref.NO.: 6/157 العدد:

Date: 16/2/2002 التاريخ:

Agreements & Loans

الى :

To: Bulgarian Foreign Trade Bank,
   7, sveta nedelya sq. sofia 1000, Bulgaria,.

Re.: Statements of the Accounts opened under
the Banking Arrangements signed between
our two Banks.

Dear sirs,
  With reference to your Statements dated 1/1/2002 and 24/1/2002.
  We would like to inform you that due to the continued unjustified sanctions imposed on our country, which makes hindrances on our banking procedures, we inform you that the matter will be subject to reconsideration when the current situation cease to exist, and the sanctions imposed on Iraq are lifted taking into your consideration that the figures of the principal debt and interest will not be considered as final figures unless all pending matters will be settled.
  This reply should not be interpreted and/or considered as a confirmation to the contents of said Statements.
  Thank you for your co-operation.
  We remain,

Yours faithfully
For Central Bank of Iraq

Ahmad s. Mohamad

D.G.
AHMED S. MOHAMAD

Alla

BANK CENTER: RASHED ST. BAGHDAD - IRAQ
TEL: 8864115 - 8865177, P. O.Box 64
TELEX: 212203 - 212586 / 212280 CN BK IK
e-mail - <cbi@niceiraq.net>

EXHIBIT
B