UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGROCOMPLECT, AD                            :
                                            :
        Plaintiff,                  :    Case No. 1:07-cv-00165 (RBW)
                                            :
                                            :
vs.                                         :
                                            :
THE REPUBLIC OF IRAQ                        :
        Defendant.                  :

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND ORDER AND JUDGMENT**

COMES NOW Plaintiff Agrocomplect, AD (hereinafter "Plaintiff" or "Agrocomplect"), by and through undersigned counsel, and, pursuant to L.Cv.R. 7(d) replies to the Opposition ("Defendant's Opposition") of Defendant the Republic of Iraq ("Iraq" or "defendant") to Plaintiff's Motion For Reconsideration And To Alter Or Amend Order And Judgment ("Pl. Motion").

**1. Application of the Banking Arrangement Terms Is Not Inconsistent With Plaintiff's Right of Action Under the Contract**

Plaintiff's Motion addressed this Court's analysis, at pages 12 through 24 of its November 30, 2007, Memorandum Opinion ("Mem. Op.") of Plaintiff's assertion that, taken together, the Contract, (*see* Amended Complaint, "Compl.", ¶¶ 4-5, and *see* Exhibit A to the Defendant's Motion to Dismiss the First Amended Complaint, "Motion to Dismiss") Memorandum No.2, (*see* discussion in Mem. Op. at 3-4), and arrangements, including certain Banking Arrangements, between the Bulgarian Foreign Trade Bank, ("Bulbank"), the National Bank for the People's Republic of Bulgaria, ("Bulgaria,") and

the Central Bank of Iraq,( "CBI") (Mem. Op. at 3-4, 16-19,) satisfied the direct effect test of the FSIA.

> In particular, Plaintiff's Motion addressed the Court's determination that:
>
>> Read collectively, these documents indicate that any payments to be made in the Bulbank's Credit Lyonnaise account in New York City were owed to Bulgaria as the creditor of the defendant, not to the plaintiff. Bulgaria, in turn, agreed to 'cover'[1] the defendant's obligations to Bulgarian companies like the plaintiff's with respect to the United States dollar portion of the contract price.

Mem. Op. at 19, and its observation that "(t)he defendant remained liable to Bulgarian companies only with respect to the Iraqi component of the contract price ...." *Id*.

On that issue, Plaintiff also suggested that the declaration of Iskren Tsonev could be reconciled with both documents incorporated into the First Amended Complaint and with plaintiff's continued standing to bring an action on the Contract against Iraq. As plaintiff wrote:

> Plaintiff respectfully suggests that the Court's determination that the declaration of Iskren Tsonev could not be reconciled with the documents incorporated into the First Amended Complaint unless "plaintiff agreed to finance its own services using the entire Bulgarian government as its agent..." or unless "plaintiff separately agreed to defer its right to payment with respect to the United States dollar portion of its contract price until Bulgaria received its payment from the defendant," (Mem.Op. at 22) overlooks a third and more plausible arrangement: one Bulgarian state agency undertook to assist another Bulgarian state agency in the collection of overdue debts. Nothing in that arrangement suggests a novation of any kind. At most –from Defendant's perspective – Plaintiff agreed to defer its right to collect payments directly from Defendant so long as CBI performed its obligations under the Banking Arrangements.

Pl. Motion, at 4.

---

[1] The Court earlier noted that Banking Arrangement Number One granted defendant "'credits' that would 'cover 100% [of the] value of the foreign exchange currency portion' of the contracts be completed between 1986 and 1987." (Internal brackets supplied in original). Memorandum Opinion, at 18. But the Court did not appear to expressly construe that provision to be an assumption by Bulbank to assume and to pay to Agrocomplect the contract obligations of defendant in the absence of payment by CBI to Bulbank.

2

Defendant argues that

> The Court correctly held that these Financing Arrangements, assuming they even applied to the Contract between the Republic and Agrocomplect, at most would have shown an obligation by CBI to repay Bulbank for financing payments made by Bulbank to Agrocomplect, and noted that, if this were true, the proper Plaintiff would be Bulbank, and not Agrocomplect.

Defendant's Opposition, at 2. Stipulating that "(t)he Court's determination that it had no subject matter jurisdiction ... did not involve the merits question of whether the Republic had any outstanding obligations to Agrocomplect," Defendant's Opposition, at 5, and (w)hether or not the Republic still owes any money to Agrocomplect has nothing to do with whether subject matter jurisdiction exists under the direct effect test," *id.*,[2]

Defendant writes that:

> Because it was unclear whether the Financing Arrangements even applied to the Contract, the Court considered **both** the scenario in which "Bulgaria agreed to finance and then refinance the Project on the defendant's behalf" (in which case "the case should be dismissed for lack of Article III standing"), **and** the scenario in which "the plaintiff's own proffered documents are not to be believed and the defendant's obligations ran directly to plaintiff (in which case, the Court determined, "there is no basis whatsoever for the plaintiff's assertions that the defendant was obliged to make payments to the plaintiff in New York.... The Court concluded that '[e]ither way, the 'direct effect' requirement is not satisfied." (emphasis, brackets in original).

Defendant's Opposition, at 5-6. But it is that very assertion of mutual exclusivity -- that reliance on any agreement by Bulbank to "finance" the Project in accordance with Banking Arrangement Number One, or comparable agreements, precludes any contention that defendant's obligations thereafter ran, or now run, to plaintiff – which plaintiff urges the court to alter, amend or reconsider.

---

[2] These concessions certainly serve to obviate concerns that Defendant would, in a forum with the jurisdiction to address the merits of plaintiff's claims, rely on this Court's ruling to challenge plaintiff's standing to bring those claims against defendant.

3

The Court does not appear to have concluded that, if, as Mr. Tsonev alleged, Bulbank served as plaintiff's bank for purposes of receipt of the Contract payments, Mem. Op., at 22, the direct effect test could not be satisfied.[3] Rather, the Court viewed the declaration to be arguably inconsistent with the plaintiff's contention that Bulbank and CBI were acting as agents for their own governments. Mem. Op. at 22.

Plaintiff's respectfully submit, however, that there is no inconsistency, because plaintiff – at the time an agency of the Bulgarian government – would naturally be a principal – along with each of the various Bulgarian agencies with projects in Iraq – of the Bulgarian government bank which undertook to negotiate structured payments from Iraq on behalf of the various government agencies seeking payment from Iraq. Bulbank acted in the ordinary course and in this case as an agent for the Bulgarian government, and, in that role, served as plaintiff's bank and agent.

The Court was thus not required to conclude that harmonization of the documents, the declaration, and the assertion that Bulbank acted as Bulgaria's agent required the assumption that "plaintiff separately agreed to defer its right to payment with respect to the United States dollar portion of its contract price until Bulgaria received its payment from the defendant." Mem. Op., at 22. Rather, plaintiff urges the court to consider another construction:

---

[3] Plaintiff does not purport to have addressed in its Motion the Courts' statements with respect to the uncertainty of the application of the Banking Arrangements to the Contract, Mem. Op., at 16-18, and the the timing of the filing of the Tsonev declaration, Mem. Op., at 22, n.12. Plaintiff does not and cannot contend that it has presented to the Court at this stage a comprehensive, complete description of the multiple agreements and their interrelationships, and respectfully acknowledges that its discovery of facts and its efforts to verify understandings has been difficult and is necessarily ongoing.

The Court also notes that plaintiff's contentions do not explain the "financing" and "cover" terminology of Banking Arrangement Number One. Mem. Op., at 22. When viewed in the context of government agencies negotiating deferred payment schedules for the benefit of and as agents for their respective agencies, there is no support in the record now before the court to construe that language to be a substitution of Bulbank as a debtor of plaintiff, and a release of Iraq. See Note 1, supra. The Court did not appear to do so, and defendant does not appear to make that contention.

> (O)ne Bulgarian state agency undertook to assist another Bulgarian state agency in the collection of overdue debts. Nothing in that arrangement suggests a novation of any kind. At most –from Defendant's perspective – Plaintiff agreed to defer its right to collect payments directly from Defendant so long as CBI performed its obligations under the Banking Arrangements.

Pl. Motion, at 4. The vehicle for that collection was the agreement between the government's respective banking arms. Iraq failed to perform, and, as a consequence, it remains liable to plaintiff under the Contract.

## 2. In the Absence of Novation, the New York Payment Requirements Can Satisfy the Court's "Direct Effect" Test

Defendant does not dispute at all plaintiff's contention that the record was insufficient to support a determination of novation. Defendant cannot, therefore, argue that the application to the Contract of the New York payment provisions in the Banking Arrangements necessarily precludes standing. Nor does defendant quarrel with the possibility that *Commercial Bank of Kuwait v. Rafidain Bank and Central Bank of Iraq* 15 F.3d 338 (2d Cir. 1994) could support a "direct effect" finding where the defendant was "supposed" to make a payment in the United States to a plaintiff's agent, rather than directly to the plaintiff.[4]

If, as plaintiff contends, Bulbank was acting as its "bank" for purposes of collecting and transmitting payments due to plaintiff under the Contract, and if, as appears undisputed, CBI has not paid the disputed amounts to Bulbank and Bulbank has not paid the disputed amounts to plaintiff, defendant's challenge to the direct effect fails. Defendant argues that the Court's 'direct effect' test cannot be satisfied because

---

[4] "At best, Commercial Bank could be read to suggest that a missed payment that is 'supposed' to be made to a plaintiff's agent in the United States may satisfy the 'direct effect' requirement of § 1605 (a)(2)." Mem.Op., at 20.

5

> Plaintiff cannot have it both ways: any payment obligations that allegedly ran from the Republic to Agrocomplect under the Contract were not 'supposed to' be settled in the United States; and any payment obligations that plaintiff alleges were 'supposed to' be settled in the United States ran from CBI to Bulbank – not from the Republic to Agrocomplect.

Defendant's Opposition, at 6. Defendant posits a putative dilemma which ignores the accretion to plaintiff of a contractual right to Contract payments through its agent in New York – a right not inconsistent with its unreleased rights under the Contract itself.

### 3. Plaintiff's Motion Satisfies Applicable Procedural Standards [5]

"Rule 59(e) motions need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice (internal quotation marks omitted)." *Anyanwutaku v. Moore* 151 F.3d 1053, 1058 (D.C. Cir.,1998).

Because defendant stipulates that the Court's ruling cannot be construed to find a novation, and has no impact on plaintiff's standing to bring its claims under the Contract, plaintiff's reliance on the January 15, 2003 internal Iraq letter, appended as Exhibit A to Plaintiff' Motion, is moot.[6]

Plaintiff does respectfully submit, however, that the court's construction of the consequences of harmonization of the Banking Arrangements and related documentation with the Tsonev declaration and the assertion of Bulbank's governmental agency status

---

[5] Out of an abundance of caution, plaintiff noted its appeal today. The appeal has not yet been docketed. Judge Collyer, in *Brown v. Wachovia Bank* 244 F.R.D. 16, 19, n.1 (D.D.C.,2007), noted that "(a) district court has jurisdiction to deny, but not grant, a Rule 59(e) motion while an appeal is pending. *Leadership Conference on Civil Rights v. Gonzales,* 421 F.Supp.2d 104, 107 (D.D.C.2006). Moreover, a Rule 59(e) motion renders ineffective any notice of appeal filed before its disposition. *Hoai v. Vo,* 935 F.2d 308, 312 (D.C.Cir.1991); *see* Fed.R.App. P. 4(a)(4)(A) (time to appeal runs from entry of order disposing of motion to alter or amend under Rule 59)." But *see* Fed.R.App.P. 4(a)(4)(B)(i)(notice of appeal filed after court enters judgment but before disposition of motion under Fed.R.Civ.P. 59 "becomes effective ... when the order disposing of the last such remaining motion is entered.")

[6] Plaintiff notes, nonetheless, that plaintiff notified counsel for defendant on October 23, 2007 of the letter, and forwarded it on November 8, 2007 "in an effort to verify the correspondence and its relevance." Pl. Mot., at 4, n.4.

was clear error, in that, as described above, Bulbank served as plaintiff's bank for purposes of collection under the Contract, without any release by plaintiff of its ultimate right to proceed against defendant in the event of non-payment.

Respectfully submitted,

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*:   (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:   (240) 632-0906
*Email*: srolinski@rolinski.com