# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AGROCOMPLECT, AD,**<br><br>Plaintiff,<br><br>v.<br><br>**THE REPUBLIC OF IRAQ,**<br><br>Defendant. | Case No. 1:07CV00165 (RBW) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE JUDGMENT AND TO AMEND FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, "FOR A STATEMENT UNDER SMITH V. POLLIN"

Matthew D. Slater
D.C. Bar No. 386986
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801
Tel.: 202 974-1500
Fax: 202 974-1999

Jonathan I. Blackman
Lisa M. Coyle
Anna A. Makanju
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Tel: 212-225-2000
Fax: 212-225-3999

Attorneys for Defendant The Republic of Iraq

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  AGROCOMPLECT IS NOT ENTITLED TO RELIEF FROM THE
    COURT'S ORDER DISMISSING THE FIRST
    AMENDED COMPLAINT ..................................................................................... 2

    A.  Rule 60(b)(2) Is The Only Basis On Which Agrocomplect Can
        Seek Relief From The Court's Judgment ...................................................... 2

    B.  Agrocomplect Has Failed To Satisfy The Standard For
        Relief Under Rule 60(b)(2) ........................................................................... 4

        1.  The Information Could Have Been Discovered In Time To
            Be Presented In Agrocomplect's Prior Pleadings ................................... 5

        2.  The Information Is Neither Admissible Nor Credible And
            Would Not Change The Outcome Of The Motion To Dismiss ................ 7

            a.  The Proposed Amendment Does Not Demonstrate That
                The Direct Effect Test Could Be Satisfied Based On Alleged
                Payments In The U.S. ......................................................................... 8

            b.  The Proposed Amendment Does Not Demonstrate That
                The Direct Effect Test Could Be Satisfied Based On The
                Use Of U.S. Suppliers ...................................................................... 11

II. AGROCOMPLECT FAILS TO MEET EVEN THE MORE LENIENT
    STANDARD APPLICABLE TO RULE 15(A) ..................................................... 13

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1746 ............................................................................................................... 7

D.C. Code § 12-301 .......................................................................................................... 5

Fed. R. Civ. P. 60(b) ...................................................................................................... 3, 4

Fed. R. Civ. P. 54(a) ......................................................................................................... 2

**Cases**

*Agrocomplect, AD v. Republic of Iraq,*
524 F. Supp.2d 16 (D.D.C. 2007) ................................................................... *passim*

*Atchinson v. Dist. of Columbia,*
73 F.3d 418 (D.C. Cir. 1996) ........................................................................... 13-14

Bell Atl. Corp. v. Twombly,
127 S.Ct. 1955 (2007) ......................................................................................... 7-8

*Bldg. Indus. Ass'n of Superior California v. Norton,*
247 F.3d 1241 (D.C. Cir. 2001) .............................................................................. 2

*Cassell v. Michaux,*
240 F.2d 406 (D.C. Cir. 1956) ................................................................................ 2

*Foman v. Davis,*
371 U.S. 178 (1962) ............................................................................................... 13

Goodman Holdings v. Rafidain Bank,
26 F.3d 1143 (D.C. Cir. 1994) ......................................................................... 11-12

IDAS Res. N.V. v. Empresa Nacional de Diamentes de Angola E.P.,
No. 06-00570, 2006 WL 3060017 (D.D.C. Oct. 26, 2006) ............................ 11, 12-13

*In re Korean Air Lines Disaster of Sept. 1, 1983,*
156 F.R.D. 18 (D.D.C. 1994) ............................................................................... 4-5

*Kaempe v. Myers,*
367 F.3d 958 (D.C. Cir. 2004) ................................................................................ 8

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
336 F.3d 1094 (D.C. Cir. 2003) ........................................................................................ 3

*Newman-Green, Inc. v. Alfonzo-Larrain,
490 U.S. 826 (1989) ........................................................................................................ 2-3

Patriot, Inc. v. U.S. Dep't of Hous. & Urban Dev.,
963 F. Supp. 1 (D.D.C. 1997) .......................................................................................... 12

Polzin v. Barna & Co.,
No. 3:07-cv-127, 2007 WL 4365760 (E.D. Tenn. Dec. 11, 2007) .................................... 5

Saudi Arabia v. Nelson,
507 U.S. 349 (1993) ......................................................................................................... 12

Smith v. Pollin,
194 F.2d 349 (D.C. Cir. 1952) ......................................................................................... 15

*Willoughby v. Potomac Elec. Power Co.,
100 F.3d 999 (D.C. Cir. 1996) .......................................................................................... 13

## Other Authorities

5A Charles Alan Wright & Arthur R. Miller, Federal
Practice & Procedure 3d § 1327 (West 2007) .................................................................... 9

Defendant The Republic of Iraq ("Iraq" or the "Republic") submits this Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Vacate Judgment and to Amend First Amended Complaint, or, in the Alternative, for a "Statement under <u>Smith v. Pollin</u>" (the "Motion to Amend").

## **PRELIMINARY STATEMENT**

Throughout the course of this litigation, Agrocomplect has repeatedly attempted to manufacture subject matter jurisdiction by adding new allegations in piecemeal fashion. Each time the Court has properly rejected these efforts, Agrocomplect has belatedly dribbled out something supposedly "new" – some "new" document, declaration or assertion regarding matters that on their face would have been within its knowledge decades ago, and if true or legally relevant, could have been included in its original pleadings. Agrocomplect's Motion to Amend – its second meritless attempt to overturn the Court's November 30, 2007 order granting the Republic's motion to dismiss the first amended complaint for lack of subject matter jurisdiction under the "direct effect" prong of § 1605(a)(2) of the Foreign Sovereign Immunities Act (the "FSIA") – is the latest example of this conduct.

Like Agrocomplect's first post-judgment motion, the Motion to Amend ignores the relevant legal standards for post-dismissal, post-judgment amendments of pleadings, as well as the Court's repeated admonitions against belatedly raising new arguments. Based solely on the conclusory statements of its own employee, and others who it could also have consulted years ago, that the documents Agrocomplect relied on and referenced in its prior complaint do not in fact mean what they say, Agrocomplect asks the Court to ignore the plain terms of those documents, and permit it to start all over. Agrocomplect has failed to demonstrate entitlement to any such relief.

## ARGUMENT

## POINT I

## AGROCOMPLECT IS NOT ENTITLED TO RELIEF FROM THE COURT'S ORDER DISMISSING THE FIRST AMENDED COMPLAINT

**A.      Rule 60(b)(2) Is The Only Basis On Which Agrocomplect Can Seek Relief From The Court's Judgment**

It is well-settled that a post-judgment motion to amend a complaint can only be granted *after* the judgment is set aside or vacated pursuant to Rule 59 or 60(b).[1] Bldg. Indus. Ass'n of Superior California v. Norton, 247 F.3d 1241, 1245 (D.C. Cir. 2001); Cassell v. Michaux, 240 F.2d 406, 408 (D.C. Cir. 1956). Thus, the liberal standard for granting leave to amend under Rule 15(a) does not become applicable unless the judgment is set aside or vacated pursuant to the far more stringent requisites of Rule 59 or 60(b). Were it otherwise, the benefits of finality would virtually never apply to dispositive orders, as dissatisfied parties could always avoid the strict standards applicable to relief from such orders by simply filing post-judgment motions to amend their pleadings. See Norton, 247 F.3d at 1245 (the "requirement of a Rule 59 or 60 motion prior to post-judgment amendment is employed to serve the judicial policy favoring finality of judgments and the expeditious termination of litigation." (internal quotation marks omitted)). Agrocomplect's reliance on the liberal standard for granting leave to amend under Rule 15(a) to the exclusion of the much stricter standards applicable to requests for post-judgment relief that it does not even mention in its motion is therefore wholly misplaced.[2]

---

[1]      Under Rule 54(a), "judgment" is of course defined to include "any order from which an appeal lies," and therefore includes this Court's November 30, 2007 final order of dismissal, from which Agrocomplect filed a notice of appeal on December 28, 2007.

[2]      Agrocomplect instead cites 28 U.S.C. § 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," as a basis for allowing amendment of its complaint to include the "new" jurisdictional information. However, as the Supreme Court made clear, "§ 1653 speaks of amending '*allegations* of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction

Without even discussing the strict standards of either Rule 59 or Rule 60(b) for post-judgment amendment, Agrocomplect tacitly recognizes Rule 60(b)'s applicability by styling its motion as one "to vacate judgment," and asserts that its motion to amend under Rule 15(a) is "accompanied by [Agrocomplect's] request for relief under Fed.R.Civ.P. 59(e)." Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Amend First Amended Complaint ("Pl. Br.") at 2. However, Agrocomplect's Rule 15(a) motion did *not* in fact "accompany" its Rule 59(e) motion for reconsideration, which the Court denied by Order dated Jan. 25, 2008, but rather was filed nearly a month *after* the close of briefing on that motion. The present motion consequently cannot be construed as a second Rule 59(e) motion. See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (Rule 59(e) motion "must be filed within 10 days of the challenged order"); see also Memorandum Opinion, dated Jan. 25, 2008 ("Jan. 25 Op.") at 2, n. 3 ("The Court ... construes [the present motion] as one for leave to file an amended complaint, and not as a second motion for reconsideration.").

Agrocomplect's sole remaining avenue for relief can therefore only be a motion under Fed. R. Civ. P. 60(b), which allows a court to relieve a party from a final judgment for six specifically enumerated reasons.[3] But although Agrocomplect mentions Rule 60 in passing,

---

that actually exists [such as adding allegations about corporate citizenship to cure inadequate pleading of diversity jurisdiction], and not defects in the jurisdictional facts themselves." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989). Here, Agrocomplect is clearly attempting to cure "defects in the jurisdictional facts" by new allegations that are themselves inconsistent with the documents on which it previously relied in its pleadings, and thus cannot avail itself of § 1653. See id.

[3]    Rule 60(b) provides:
On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed

Mot. To Amend at 1, it fails even to state the legal standard applicable to that Rule, much less present any argument as to how the standard has been met.[4] This is not surprising: based on what is contained in its motion papers, the only theory on which Agrocomplect could possibly be trying to claim entitlement to relief from judgment is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(2), but its proffer is neither "new" within the meaning of the rule nor would warrant relief in any event.

**B.      Agrocomplect Has Failed To Satisfy The Standard For Relief Under Rule 60(b)(2)**

The "new information" offered by Agrocomplect in support of its motion consists of the declarations of: (i) Slav Stoychev Slavov, an Agrocomplect employee who has worked for the company since 1980, see Pl. Br. Ex. 2A; (ii) Blecho Belchev, the former Finance Minister of the communist People's Republic of Bulgaria from 1976-1990, see Pl. Br. Ex. 2B; (iii) Hristo Dimitrov Latchev, an employee of Bulgartabac Holding, AD, an entity that is a party to neither this action nor the Contract, see Pl. Br. Ex. 2C; and (iv) Zahari Zheliazkov Tomov, Agrocomplect's Bulgarian counsel, see Pl. Br. Ex. 3. In order for this "new information" to satisfy the Rule 60(b)(2) standard, the following criteria must be met:

> (1) the evidence must have been in existence at the time of trial; (2) the evidence must be such that it was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding; (3) the evidence must not be merely cumulative or impeaching; and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome.

---

or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

[4]      As the Court has previously noted, its role is not to "act as an advocate for [Agrocomplect] and construct [its] legal arguments on [its] behalf." Memorandum Opinion dated Nov. 30, 2007 ("Nov. 30 Op.") at 6, n.7, 524 F. Supp. 2d 16, 20 (D.D.C. 2007) (quoting United States v. Real Property, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) (Walton, J.)). Unfortunately, Agrocomplect's failure to cite the relevant standards has forced the Republic to do so.

In re Korean Air Lines Disaster of Sept. 1, 1983, 156 F.R.D. 18, 22 (D.D.C. 1994). The information contained in the declarations of these four individuals woefully fails to meet these criteria.

### 1. The Information Could Have Been Discovered In Time To Be Presented In Agrocomplect's Prior Pleadings

The Court may reasonably view with skepticism the plethora of excuses Agrocomplect offers for its delay in presenting the additional materials on which it relies. See, e.g., Polzin v. Barna & Co., No. 3:07-cv-127, 2007 WL 4365760, at *2 (E.D. Tenn. Dec. 11, 2007) (expressing disbelief at plaintiff's alleged inability to produce documents during the four months a motion to dismiss was pending, and sudden ability to produce several such documents shortly after dismissal of the complaint); cf. Pl. Br. at 8-9; Pl. Br. Ex. 3 ¶ 10 (alleging as excuses multiple fires, large commercial banking transactions occurring nearly a decade ago, uncooperative government officials and forty-year old agreements between Iraq and Bulgaria). However, the Court need not pass on the veracity of these claims because even if accepted as true, they are completely irrelevant to Agrocomplect's failure to present the allegedly new information earlier.[5]

The substance of the "new" information Agrocomplect presents concerning the two issues it raises in the motion – payment arrangements and suppliers in the United States, see Pl. Br. at 5-7; Pl. Br. Ex. 1A ¶¶ 29, 39 – is based on the declaration of Mr. Slavov.  But Mr. Slavov has "worked for Agrocomplect ... *since 1980*." Pl. Br. Ex. 2A ¶ 2 (emphasis supplied). Agrocomplect offers no explanation whatsoever – nor could one imagine any plausible

---

[5]     Whatever difficulty Agrocomplect allegedly encountered obtaining information about a Contract entered into nearly a quarter of a century ago does not explain or justify ignorance of its own business affairs relating to what is purportedly a $47 million claim.  Indeed, it is for precisely this reason that statutes of limitations – such as D.C. Code § 12-301, which would render Agrocomplect's claims untimely if they were capable of being pursued in this Court – exist.  See Nov. 30 Op. at 7, 32, 524 F. Supp. 2d at 19-20, 34 (dismissing Amended Complaint without reaching limitations issue).

explanation – for why it did not previously obtain this allegedly crucial information from an individual who has been in its employ for nearly three decades, and who claims to be intimately familiar with these matters.  See id.

Agrocomplect also submits the declaration of Mr. Belchev, the former Minister of Finance, and claims that such declaration could not have been obtained sooner because Mr. Belchev had consistently refused to meet with Agrocomplect's representative over the past year and a half, but had a sudden change of heart during the first week of December 2007 (immediately following the dismissal of Agrocomplect's Amended Complaint by this Court). See Pl. Br. at 9; Pl. Br. Ex. 3 ¶ 12.  Even accepting this remarkable coincidence as true does nothing to explain why Agrocomplect did not submit Mr. Belchev's declaration along with its Rule 59(e) motion for reconsideration, which was filed on December 14, 2007 – a full week after Mr. Belchev's miraculous volte-face.  In any event, Mr. Belchev's declaration is both duplicative of Mr. Slavov's and irrelevant to the Court's jurisdictional determination.

The third declaration submitted by Agrocomplect is that of Mr. Latchev.  Although no explanation is offered for why Mr. Latchev could not have been consulted earlier, the question is moot because his declaration is irrelevant to the instant motion.  Mr. Latchev works for Bulgartabac Holding, AD, Pl. Ex. 2C ¶ 2, a company with no apparent connection to Agrocomplect, the Contract or this action.  He does not claim to have *any* personal knowledge about Agrocomplect or the Contract and indeed, admits that even his discussion of the payment arrangements between Bulbank and his own company is based not on his own knowledge, but rather on "an explanation [provided to him by an unidentified individual at Unicredit-Bulbank] of the mechanism utilized by Bulgaria for payment from Iraq for various international contracts with State owned Bulgarian companies."  Id. ¶ 3.

6

Finally, the declaration of Mr. Tomov, Agrocomplect's Bulgarian counsel, does not contain any new information purportedly relevant to the existence of subject matter jurisdiction, but rather is aimed exclusively at trying to provide an excuse for Agrocomplect's delay in presenting the information contained in the other three declarations. See Pl. Br. Ex. 3. As discussed, *supra*, these excuses are unavailing. Particularly notable is the fact that amidst his story of fires, pillage and other natural and manmade catastrophes, Mr. Tomov says nothing at all about why all of the supposedly relevant information that Agrocomplect now seeks to present could not have been provided by Mr. Slavov, Agrocomplect's high-level employee, in January 2007 when this action was first filed. This silence is fatal to any claim of "newly discovered" evidence.

### 2.    The Information Is Neither Admissible Nor Credible And Would Not Change The Outcome Of The Motion To Dismiss

In any event, Agrocomplect's "new" allegations would be unavailing even if timely made. As an initial matter, although each of the four unsworn declarations submitted by Agrocomplect purports to be made under penalty of perjury, they contain qualifying language and therefore do not carry the same force and effect as sworn declarations pursuant to 28 U.S.C. § 1746.[6] They are therefore legal nullities, and certainly cannot be considered admissible evidence for purposes of granting a motion pursuant to Rule 60(b)(2). Nor is the information contained in these documents even remotely plausible. Cf. Bell Atl. Corp. v. Twombly, 127

---

[6]    28 U.S.C. § 1746 provides that an unsworn declaration shall have the same force and effect as a sworn declaration if it is made in writing and subscribed to by the declarant in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." The declarations submitted by Agrocomplect each use language similar to the following: "I...declare under penalty under the laws of the United States of America of perjury that the information provided herein is accurate *to the best of my personal knowledge and belief.*" Pl. Br. Ex. 2A (emphasis supplied); see also Pl. Br. Exs. 2B, 2C and 3. Particularly in the case of Mr. Latchev, who admits to having *no* relevant personal knowledge, this language essentially negates each declarant's agreement to be subject to penalty of perjury based on the statements contained in his declaration.

7

S.Ct. 1955, 1974 (2007) (on a motion to dismiss under Rule 12(b)(6), court should consider whether allegations in complaint are "plausible"). To the contrary, these defective declarations contradict the plain terms of the Banking Arrangements by stating that payments under such Arrangements worked differently than the documents themselves – assuming they related to the Contract in the first place – would clearly provide, and otherwise contain nothing that would alter the Court's determination that it lacks subject matter jurisdiction over Agrocomplect's claims.

> **a.     The Proposed Amendment Does Not Demonstrate That The Direct Effect Test Could Be Satisfied Based On Alleged Payments In The U.S.**

The new "payment" allegations contained in paragraph 39 of the proposed second amended complaint (the "Proposed Amendment") are purportedly "directed at the [C]ourt's determination that the documents providing for payment in New York did not satisfy the direct effect test." Pl. Br. at 5. However, these allegations are entirely irrelevant to the Court's ruling. First, the new allegations assume that the Banking Arrangements applied to and provided the payment terms of the Contract. But as the Court has twice correctly noted, it is "highly questionable whether the Banking Arrangements [set forth in those documents] have anything to do with the Contract at all." Jan. 25 Op. at 6, n.9; see also Nov. 30 Op. at 17-18, 524 F. Supp. 2d at 26-27.

More important, if the Court were to assume that the Banking Arrangements did apply to the Contract, as plaintiff alleges, Agrocomplect cannot then plead around the plain terms of those documents simply by making contradictory allegations. See Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) (holding that court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial

notice"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1327

(West 2007) ("when a disparity exists between the written instrument annexed to the pleadings

and the allegations in the pleadings, the terms of the written instrument will control").

According to Agrocomplect's Proposed Amendment, the Banking Arrangements provided that:

> the payment arrangements under the Contract worked as follows:
> plaintiff performed work under the contract according to a
> schedule set forth in the contract; upon completion of each stage of
> work plaintiff would obtain from the Iraqi Ministry of Irrigation a
> certificate of completion for that work; plaintiff would submit the
> approved certificate, which articulated a dollar amount for the
> completed work, to the Bulgarian Ministry of Finance; the
> Ministry would instruct Bulbank to pay Agro in accordance with
> the banking agreements from funds sent by CBI to Bulbank's bank
> account with Credit Lyonnais, New York. Bulbank thereafter
> credited plaintiff's account at Bulbank in Sofia, Bulgaria.

Pl. Br. at 6-7; Pl. Br. Ex. 1A ¶ 39(k).[7]  But the Court has already correctly held that if the

Banking Arrangements in fact applied to the Contract, Agrocomplect would *not* be paid by

Bulbank from funds it had already received from CBI (as plaintiff now seeks to allege), but

rather that the amounts owed by the Republic to Agrocomplect for work performed under the

Contract would be ***advanced*** as financing by Bulbank, and CBI would subsequently ***repay*** those

amounts to Bulbank in New York.  In its November 30 Opinion, the Court stated:

> Banking Arrangement No. (1), like the earlier banking
> arrangement referenced in Memorandum No. 2, memorializes a
> ***financing arrangement*** between Bulgaria and the defendant
> whereby the ***Bulbank would advance the CBI credit to cover the
> foreign currency component of all Iraqi construction contracts***
> with Bulgarian companies, and Banking Arrangement No. (3)

---

[7]     Throughout the Proposed Amendment, Agrocomplect erroneously treats Iraq and CBI as interchangeable
entities. Paragraph 39(f) alleges that after being received into Bulbank's account in New York, "US dollars
payments *from Iraq* would then be transferred to the respective company bank accounts." Pl. Br. at 6 (emphasis
supplied); Pl. Br. Ex. 1A ¶ 39(f) (emphasis supplied). However, the Banking Arrangements do not contemplate *any*
"US dollar payments *from Iraq*," being made into Bulbank's account in New York. Rather, it was *CBI* that was
obligated to make such payments and, as the Court correctly noted, this indicates that "the Banking Arrangements at
best relate to the advancement and repayment of the financing for [Iraq's] obligations under the Contract, *not* the
obligations themselves." Jan. 25 Op. at 6 (emphasis supplied).

> memorializes a ***refinancing arrangement*** between the same two
> countries that would permit the defendant to defer half of the
> amount due to the Bulbank in 1986 for one year.

Nov. 30 Op. at 18-19, 524 F. Supp. 2d at 27 (emphasis supplied); see also Jan. 25 Op. at 6.

Additionally, the theory advanced in the Proposed Amendment requires the Court to

accept that Bulbank was merely acting as Agrocomplect's agent in accepting payments from CBI

(and that CBI was acting merely as Iraq's agent) pursuant to the Banking Arrangements. But the

Court has already rejected a similar theory set forth by Agrocomplect in previous submissions.

Based on the belatedly submitted declaration of its president, Iskren Conev Tconev,[8]

Agrocomplect argued in its Discovery Motion reply brief that "all Contract monies paid to the

Credit Lyonnais account in New York were exclusively the property of Plaintiff, and that neither

Bulbank nor any other party had any claim to those monies." Plaintiff's Reply to Defendant's

Opposition to Plaintiff's Motion for Leave to Conduct Limited Discovery on Motion to Dismiss

First Amended Complaint, dated Oct. 8, 2007, at 3-4 n.7. The Court correctly rejected this

argument, stating:

> Assuming that the Court would be willing to consider this untimely
> submitted document at all, it still does not explain why the Bulbank
> 'financed' the construction projects at issue in those documents by
> 'covering' the dollar component of the amounts due under the
> contracts relating to those projects. Banking Arrangement No. (1)
> at 1.

Nov. 30 Op. at 22, 524 F. Supp. 2d at 29. Agrocomplect's new theory again fails to explain why

Bulbank would have "financed" the Contract if, according to the Proposed Amendment, it was

simply "serving as a foreign currency intermediary on behalf of the Bulgarian companies and

Iraq," Pl. Br. at 6; Pl. Br. Ex. 1A ¶ 39(i). Nor does the Proposed Amendment allege any facts

---

[8]     We cannot help noting that if anything in Mr. Slavov's belated declaration were either relevant or plausible, there is no reason why it would not have been included in Mr. Tconev's (itself also belated but earlier) declaration. It is hard to escape the conclusion that Agrocomplect is simply "making it up as it goes along."

10

suggesting that Agrocomplect "exercised the type of control over [Bulbank] that is the hallmark of any principal-agency relationship." Jan. 25 Op. at 9.

> **b.     The Proposed Amendment Does Not Demonstrate That The Direct Effect Test Could Be Satisfied Based On The Use Of U.S. Suppliers**

The other new allegations, which are contained in paragraph 29 of the Proposed Amendment are purportedly "directed at … the [C]ourt's determination that the plaintiffs do not allege that goods and services were 'supposed' to come from the United States pursuant to the Contract or based on the past practices of the parties," Pl. Br. at 5, and state that the parties "anticipated" that construction equipment provided by United States suppliers would be used for the project because such equipment had been used in five prior construction projects undertaken by Agrocomplect in Iraq. Id. at 7, Pl. Br. Ex. 1A ¶ 29, Pl. Br. Ex. 2A ¶ 4.  Agrocomplect's attempt to amend its complaint to include this new allegation is ostensibly made in reliance on Judge Wald's concurrence in Goodman Holdings v. Rafidain Bank, 26 F.3d 1143 (D.C. Cir. 1994) (Wald, J., concurring), which theoretically "left open the possibility that a court could find a 'direct effect' based upon a non-express agreement *to pay* in the United States," IDAS Res. N.V. v. Empresa Nacional de Diamentes de Angola E.P., No. 06-00570, 2006 WL 3060017, at *9 (D.D.C. Oct. 26, 2006) (emphasis supplied); see also Goodman Holdings, 26 F.3d at 1147 (Wald, J., concurring) ("[I]f the longstanding consistent customary practice between [the parties] had been for [the defendant] *to pay* [the plaintiff] from its New York accounts, the breach … might well have had a direct and immediate consequence in the United States." (emphasis supplied)).  This reliance is misplaced.

Judge Wald's concurring opinion in Goodman Holdings addressed the hypothetical scenario in which the longstanding practice of the parties created an ***implicit agreement*** that an integral part of the contract – i.e., payment – would be ***performed*** in the United States.  See

Goodman Holdings, 26 F.3d at 1147 (Wald, J., concurring).  But Agrocomplect's new allegations are insufficient as a matter of law to support a finding that the parties implicitly agreed to use equipment provided by United States suppliers for the Contract.  See Patriot, Inc. v. U.S. Dep't of Hous. & Urban Dev., 963 F. Supp. 1, 6 (D.D.C. 1997) (holding that the "mere expectancy of a continued course of conduct is not enough" to establish an implied contract (internal quotation marks omitted)).[9]

More important, even if such an implicit agreement existed, the fact that United States suppliers allegedly provided equipment to Agrocomplect for the project *in Iraq* does not suggest that any part of the Contract was performed *in the United States*.  Nor can Agrocomplect claim that the direct effect test is satisfied based on any losses allegedly suffered by United States suppliers as a result of non-payment to them by Agrocomplect, because its claim against the Republic cannot be "based upon" any such losses.  See Saudi Arabia v. Nelson, 507 U.S. 349 (1993); see also Nov. 30 Op. at 21, 524 F. Supp. 2d at 28 ("in the context of a breach of contract claim the phrase 'based upon' in § 1605(a), as interpreted by the Supreme Court in Nelson, effectively requires that the foreign sovereign's commercial activity *directly affect the plaintiff* ...to satisfy the requirements of § 1605(a)(2)" (emphasis supplied)).

In any event, Agrocomplect does not cite a single case in which a "direct effect" was found merely because of the plaintiff's alleged use of United States subcontractors to supply goods for a project to be performed in a foreign state, where the foreign state defendant had no obligation to do anything with regard to the subcontractors in the United States.  Indeed, "[a]s a factual matter...in almost every case, in this circuit and others, involving the direct effect exception, the existence or absence of an *expressly* designated place of payment has been

---

9       Indeed, it is hardly surprising that the Saddam regime did not require the use of American equipment by contractors performing work in Iraq.

12

decisive." IDAS, 2006 WL 3060017, at *9 (emphasis supplied) (internal quotation marks omitted).

* * *

In sum, because Agrocomplect cannot meet the legal standard applicable to a motion for relief from judgment pursuant to Rule 60(b), there is no basis on which the Court may consider its motion to amend the first amended complaint pursuant to Rule 15(a). That motion should therefore be denied.

## POINT II

### AGROCOMPLECT FAILS TO MEET EVEN THE MORE LENIENT STANDARD APPLICABLE TO RULE 15(A)

Even if it were appropriate for the Court to consider Agrocomplect's post-judgment Motion to Amend simply under Rule 15(a), which it is not, plaintiff fails to meet even the more liberal standard applicable to that Rule because the Proposed Amendment would be futile and is a product of the plaintiff's undue delay.

As Agrocomplect concedes, see Pl. Br. at 3, denial of a motion for leave to amend is appropriate where amendment of the complaint would be futile, see Foman v. Davis, 371 U.S. 178, 182 (1962); Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996). As discussed in detail, *supra*, even if Agrocomplect were permitted to amend its complaint as proposed, the direct effect test of the FSIA would still not be satisfied, and dismissal would still be appropriate, rendering any such amendment futile.

Moreover, the Court could deny Agrocomplect's motion to amend based simply on its undue delay in presenting the new allegations. Notwithstanding Agrocomplect's reliance on Atchinson v. District of Columbia, 73 F.3d 418, 426 (D.C. Cir. 1996), for the proposition that "delay alone does *not* suffice as a ground for denying leave," Pl. Br. at 9 (emphasis supplied), in

13

fact the court in <u>Atchinson</u> stated that "<u>Foman</u> and our case law ... make clear that undue delay *is* a sufficient reason for denying leave to amend," <u>Atchinson</u>, 73 F.3d at 426 (emphasis supplied).  As discussed in detail, ***supra***, Agrocomplect has given no legitimate or plausible reason why it did not make the allegations contained in the Proposed Amendment in either of its two prior pleadings.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to vacate this Court's judgment and to file a second amended complaint, or, in the alternative, for a statement under <u>Smith v. Pollin</u>,[10] should be denied.

Dated: February 7, 2008

Respectfully submitted,

/s/ Matthew D. Slater
Matthew D. Slater (D.C. Bar # 386986)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
Facsimile:   (202) 974-1999

Jonathan I. Blackman
Lisa M. Coyle
Anna A. Makanju
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:   (212) 225-3999

Attorneys for Defendant The Republic of Iraq

---

[10]    Under <u>Smith v. Pollin</u>, 194 F.2d 349 (D.C. Cir. 1952), if there were any basis for vacating the Court's November 30, 2007 judgment under Rule 60(b), which there is not, the pendency of Agrocomplect's appeal from that judgment would require a remand from the Court of Appeals to do this.  Since there is no such basis, that branch of Agrocomplect's motion is moot.

CERTIFICATE OF SERVICE

I, Emily C. Capehart, assistant managing clerk at Cleary Gottlieb Steen & Hamilton LLP, hereby certify that:

On February 7, 2008, a copy of the foregoing Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Vacate Judgment and to Amend First Amended Complaint, or, in the Alternative, for a Statement under <u>Smith v. Pollin</u>, and Proposed Order Denying Plaintiff's Motion to Vacate Judgment and to Amend First Amended Complaint, or, in the Alternative, "for a Statement under <u>Smith v. Pollin</u>," was served by electronic transmission through the Court's CM/ECF System on the following parties:

> Sylvia J. Rolinski
> Danielle M. Espinet
> Rolinski & Suarez, LLC
> 14915 River Road
> Potomac, Maryland 20854
> srolinski@rolinski.com
> Attorney for Agrocomplect, AD
>
> Philip M. Musolino
> Musolino & Dessel
> 1615 L Street, N.W., Suite 440
> Washington, D.C. 20036
> pmusolino@musolinoanddessel.com
> Attorney for Agrocomplect, AD

Dated: February 7, 2008                 /s/ Emily C. Capehart _____
                                         Emily C. Capehart

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

**AGROCOMPLECT, AD,**                        )
                                             )
               Plaintiff,       )
                                             )        Case No. 1:07CV00165 (RBW)
     v.                              )
                                             )
**THE REPUBLIC OF IRAQ,**                    )
                                             )
             Defendant.       )
                                             )
_____)

**[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION TO VACATE JUDGMENT
AND TO AMEND FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE,
"FOR A STATEMENT UNDER SMITH V. POLLIN"**

        Upon consideration of the Plaintiff's Motion to Vacate Judgment and to Amend

First Amended Complaint, or, in the Alternative, "for a Statement under <u>Smith v. Pollin</u>;" the

opposition thereto; any reply; the accompanying exhibits; and for good cause shown, it is, on this

_____ day of _____, 200__, hereby:

        ORDERED that the Plaintiff's motion is denied.


                             _____
                             Reggie B. Walton
                             United States District Judge

**<u>List of Persons to be Notified (LCvR 7(k))</u>**

Matthew D. Slater
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
mslater@cgsh.com

Jonathan I. Blackman
Lisa M. Coyle
Anna A. Makanju
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
jblackman@cgsh.com
lcoyle@cgsh.com
Attorneys for Defendant The Republic of Iraq

Sylvia J. Rolinski
Danielle M. Espinet
Rolinski & Suarez, LLC
14915 River Road
Potomac, Maryland 20854
srolinski@rolinski.com
Attorney for Agrocomplect, AD

Philip M. Musolino
Musolino & Dessel
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
pmusolino@musolinoanddessel.com
Attorney for Agrocomplect, AD